MICHIGAN OIL COMPANY v DEPARTMENT OF NATURAL
RESOURCES

Docket No. 80345. Submitted June 11, 1985, at Lansing.—Decided
October 31, 1985.

Plaintiffs, Michigan Oil Company, Northern Michigan Explora-
tion Company, McClure Oil Company and Amoco Production
Company, filed an action against defendants, the Department of
Natural Resources, Natural Resources Commission, and How-
ard A. Tanner, in his capacity as the Director of the DNR and
Supervisor of Wells, in Ingham Circuit Court. Plaintiffs sought
a declaration from the circuit court that certain oil leases had
not expired and were extended until the Supervisor of Wells
and the DNR issued them a drilling permit on property in the
Pigeon River Country State Forest and until drilling operations
no longer were prosecuted with reasonable diligence and good
faith. Alternatively, plaintiffs sought an extension of the leases
for a period of six years, which was the length of time which
plaintiff Michigan Oil and defendants spent litigating an ear-
lier denial of drilling permits involving the same property.
Defendants moved for accelerated judgment on the basis that
the relief which plaintiffs sought had been considered and
denied in the prior litigation involving the same parties. Plain-
tiffs then moved for summary judgment contending that defen-
dants had failed to state a valid defense. After plaintiffs de-
posed the Assistant Supervisor of Wells, they renewed their
motion for sumary judgment and further contended that there
was no genuine issue as to any material fact and that they
were entitled to judgment as a matter of law. The circuit court,
Thomas L. Brown, J., granted plaintiffs' motion and ordered an

REFERENCES

Am Jur 2d, Appeal and Error §§ 314, 502, 503

Am Jur 2d, Judgments §§ 394 et seq.

Am Jur 2d, Pleading §§ 230 et seq.

Right to voluntary dismissal of civil action as affected by opponent's
motion for summary judgment, judgment on the pleadings, or
directed verdict. 36 ALR3d 1113.

Comment note on mutuality of estoppel as prerequisite of availabil-
ity of doctrine of collateral estoppel to a stranger to the judg-
ment. 31 ALR3d 1044.

extension of the primary term of the leases to six years commencing from the date of the order. Defendants appealed. *Held:*

1. The cause of action in the prior litigation was not identical to that in the instant case. In the earlier case, the Supreme Court was solely concerned with whether the Natural Resources Commission had the statutory authority to refuse plaintiff Michigan Oil the drilling permits. The Supreme Court could not have reached the merits of the issue in the instant case, *i.e.,* whether plaintiff should be granted an extended lease term because of the delays encountered in the denial of drilling permits, since the issue was not ripe at the time nor was it raised at the trial of the earlier case. Since the issue in the instant case was not litigated or determined in the prior litigation between the parties, neither res judicata nor collateral estoppel barred its adjudication in the instant case.

2. Defendants failed to state a valid defense to plaintiffs' claims. The circuit court therefore properly granted summary judgment for plaintiffs on an undisputed set of facts.

3. The circuit court did not err in ordering an extension of the oil leases. The court would have effectuated a forfeiture, which equity abhors, had it denied plaintiffs' request for extension.

Affirmed.

1. Words and Phrases — Res Judicata.

The doctrine of res judicata provides that, where two parties have fully litigated a particular claim and a final judgment has resulted, that claim may not be litigated by the losing party; there are three prerequisites for a prior judgment to constitute a bar in a subsequent action; (1) the former action must have been decided on the merits; (2) the same matter contested in the second action must have been decided in the first action; and (3) the two actions must be between the same parties or their privies.

2. Words and Phrases — Res Judicata.

The doctrine of res judicata bars not only those claims that were litigated in an earlier action but also those claims arising out of the same transaction which a plaintiff could have brought, but did not.

3. Estoppel — Collateral Estoppel.

Collateral estoppel bars the relitigation of issues which have been actually determined in a prior lawsuit between the parties or their privies.

4. JUDGMENT — APPEAL.

Where a case is appealed, it is the judgment entered upon such appeal which determines the rights of the parties; they are not bound by opinions or statements of the court seeking to define the extent to which such judgments shall prejudice the rights of the parties in other actions.

5. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE A VALID DEFENSE — COURT RULES.

A motion for summary judgment based on the failure to state a valid defense tests the legal sufficiency of the pleaded defense; the motion is tested by reference to the pleadings alone, with all well-pleaded allegations accepted as true, and by determining whether a defendant's defenses are so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery (GCR 1963, 117.2[2]).

6. MOTIONS AND ORDERS — SUMMARY JUDGMENT — PLEADING.

A motion for summary judgment for failure to state a valid defense can be defeated by denying an allegation (GCR 1963, 117.2[2]).

7. MOTIONS AND ORDERS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT — COURT RULES.

A grant of summary judgment on the ground that there is no genuine issue as to any material fact is proper only where there are no material issues of fact and the trial court may determine as a matter of law the appropriate disposition of the claim; the court must also be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3]).

*Foster, Swift, Collins & Coey, P.C.* (by *Webb A. Smith*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Stewart H. Freemen* and *Thomas F. Schimpf,* Assistants Attorney General, for defendants.

Before: MACKENZIE, P.J., and HOOD and J. MIES,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. The events giving rise to this case began on October 1, 1968, when defendant Department of Natural Resources's predecessor in interest, the Department of Conservation, and plaintiff Amoco Production Company's predecessor in interest, Pan American Petroleum Corporation, entered into two lease agreements. Under the agreements, gas and oil rights were leased to two parcels, referred to by lease numbers 9656 and 9657. These were parts of the state's opening of the area in the Pigeon River Country State Forest in Otsego and Cheboygan Counties to oil and gas exploration and development. Pan American assigned an undivided one-half interest in 9656 and 9657 to plaintiff Northern Michigan Exploration Company (NOMECO) on December 14, 1968. This was approved by the Department of Conservation.

In April of 1971, Amoco and NOMECO applied to defendant Supervisor of Wells and the DNR for a permit to commence drilling on the SW¼ of the SE¼ of section 22 which is a 40-acre site in Corwith Township covered by lease 9656 (hereinafter referred to as Corwith 1-22). On October 11, 1971, the Supervisor of Wells and the DNR denied the application because the oil and gas drilling would cause " 'serious and unnecessary damage' to various wildlife in the area, the swamp in the area would be affected, and the drilling would cause a serious intrusion into a nearly solid block of semi-wilderness area of state lands". *Michigan Oil Co v Natural Resources Comm*, 406 Mich 1, 18-19; 276 NW2d 141 (1979), *cert den* 444 US 980; 100 S Ct 482; 62 L Ed 2d 407 (1979).

On January 28, 1972, Amoco & NOMECO assigned their lease rights to Corwith 1-22 to plaintiff McClure Oil Co. Vance W. Orr, who was Vice-President of McClure Oil Co., and President of Michigan Oil Co. at the time and who accepted the

assignment of the lease on behalf of McClure Oil, had full knowledge of the denial because of his membership on the Oil and Gas Advisory Board of the Supervisor of Wells. On May 19, 1972, McClure then entered into a "farmout" agreement with plaintiff Michigan Oil Co., McClure's wholly owned subsidiary, for Corwith 1-22. Under the farmout agreement Michigan Oil would receive assignment of the leasehold interest provided that it could obtain a drilling permit and commence drilling on or before August 1, 1972. 406 Mich 19.

On May 31, 1972, Michigan Oil applied for a permit to commence drilling on Corwith 1-22. The Supervisor of Wells and the DNR denied the permit in a letter dated July 21, 1972. The letter explained that the permit was denied for the same reasons that the application of 1971 was denied, that is, because drilling at the site could not be conducted without causing serious damage to animal life and spoiling state-owned lands. The letter also explained that the Natural Resources Commission had asked the DNR to set up a forest management plan to preserve the special quality environment now present and that Michigan Oil could expect "direct denial of all other applications for drilling permits in the area under study, pending drafting of and action on the management plan". 406 Mich 20. Approximately a week later, Michigan Oil appealed the denial to the Natural Resources Commission which affirmed on April 16, 1974. The commission's decision was appealed to the Ingham Circuit Court on June 11, 1974, and was affirmed on June 27, 1975. This Court affirmed the decision of the circuit court in *Michigan Oil Co v Natural Resources Comm,* 71 Mich App 667; 249 NW2d 135 (1976).

The Supreme Court initially denied Michigan

Oil's application for leave to appeal[1] but granted it on reconsideration.[2] In affirming this Court, Justices MOODY, WILLIAMS and FITZGERALD found that the Natural Resources Commission under the Department of Conservation act[3] and the oil conservation act[4] had the statutory authority to deny Michigan Oil's request for a drilling permit. 406 Mich 33. Justice KAVANAGH concurred in the affirmance. 406 Mich 34. Justices LEVIN and COLEMAN, with Justice RYAN concurring, would have reversed the decision of the commission, extended Michigan Oil's lease for the time between the denial of its application for a drilling permit and October 31, 1978, and remanded to circuit court for a hearing under the Environmental Protection Act.[5] Michigan Oil's petition for writ of certiorari on this matter was denied by the United States Supreme Court, 444 US 980 (1979).

While Michigan Oil was unsuccessfully pursuing the drilling permit appeal, the DNR developed a comprehensive scheme of management for oil drilling and exploration in the Pigeon River Country State Forest. Leaseholders for other parcels involved in that area and the DNR entered into negotiations in 1976. Lease terms for the involved acreage and a unit agreement were established. In December, 1976, the DNR offered in writing to allow Michigan Oil to join the consent order and enter into an appropriate unit agreement to permit oil and gas development on Corwith 1-22. Michigan Oil rejected the offer.

Since September 20, 1978, plaintiffs have repeatedly requested the DNR to extend leases nos. 9656,

[1] 399 Mich 892 (1977).

[2] 400 Mich 843 (1977).

[3] MCL 299.1 *et seq.;* MSA 13.1 *et seq.*

[4] MCL 319.1 *et seq.;* MSA 13.139(1) *et seq.*

[5] MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.*

9656-A and 9657 beyond the 10-year primary term provided in paragraph D of each lease which provides:

"It is agreed that this lease shall continue in force for a term of ten years from this date [October 1, 1968], and as long thereafter as oil and/or gas are produced in paying quantities from said lands by the Lessee; provided, however, if Lessee is engaged in actual drilling operations upon any well or wells on said lands at the expiration of the primary term of this lease, this lease shall remain in force and its terms shall continue as long as drilling operations on such well or wells are prosecuted with reasonable diligence and good faith, and if oil and/or gas be found in paying quantities, this lease shall continue and be in force with like effect as if such well or wells had been completed within the primary term; provided further, that the Lessor may extend the primary term of this lease upon such terms and conditions as it deems advisable, if in the opinion of the Lessor sufficient exploratory and development work has been conducted by the Lessee on the leased premises or in the vicinity thereof to justify such extension."

The DNR, however, refused to extend the leases or acknowledge that the leases had been extended. Instead, it took the position that the 10-year period had expired and the leases had terminated under paragraph D.

Plaintiffs filed the complaint commencing the present litigation on December 30, 1981. They asked the trial court to declare that leases 9656, 9656-A and 9657 were extended until the Supervisor of Wells and the DNR issued them a drilling permit and until drilling operations no longer were prosecuted with reasonable diligence and good faith. In the alternative, the plaintiffs sought an extension for the period of the prior litigation, which was about 6 years.

Defendants sought accelerated judgment under

GCR 1963, 116.1(5), claiming that the relief requested had been considered and denied in the prior litigation culminating with the Supreme Court decision in *Michigan Oil Co v Natural Resources Comm, supra.* The trial court denied defendants' motion.

Plaintiffs then brought a motion for summary judgment under GCR 1963, 117.2(2), failure to state a valid defense, which was denied without prejudice. After plaintiffs deposed Arthur E. Slaughter, whose testimony is addressed briefly below, plaintiffs filed a renewed motion for summary judgment under subsections (2) and (3) of GCR 1963, 117.2. The trial court granted the motion and ordered an extension of the primary term of the leases to six years commencing from the date of its order. Defendants appeal as of right.

The first issue we address is whether the court should have granted accelerated judgment to defendants and dismissed plaintiffs' complaint based on the doctrines of res judicata and/or collateral estoppel. Defendants claim that Michigan Oil has already fought and lost its argument that the state lease was wrongfully forfeited by defendants in *Michigan Oil Co v Natural Resources Comm, supra.* They claim, therefore, that plaintiffs are barred from bringing the present action. We disagree.

This Court in *Ward v DAIIE,* 115 Mich App 30, 37; 320 NW2d 280 (1982), set forth the elements of the doctrine of res judicata:

"The doctrine of res judicata provides that where two parties have fully litigated a particular claim and a final judgment has resulted, that claim may not be relitigated by either party. In *Tucker v Rohrback,* [13 Mich 73, 75 (1864)] the Supreme Court delineated three prerequisites for a prior judgment to constitute a bar in a subsequent action: (1) the former action must have

been decided on the merits; (2) *the same matter contested in the second action must have been decided in the first;* and (3) the two actions must be between the same parties or privies." (Footnotes omitted.) (Emphasis added.)

Michigan courts apply the doctrine of res judicata broadly so as to bar not only those claims that were litigated but also those claims arising out of the same transaction which plaintiff could have brought, but did not. *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 160; 294 NW2d 165 (1980).

Collateral estoppel bars the relitigation of issues which have been actually determined in a previous lawsuit between the parties or their privies. *La-Vergne v Community National Bank of Pontiac,* 132 Mich App 387, 391; 347 NW2d 463 (1984); *Darin & Armstrong, Inc v Ben Agree Co,* 88 Mich App 128; 276 NW2d 869 (1979), *lv den* 406 Mich 1007 (1982).

Applying these doctrines to the present issue, we first conclude that the cause of action in the prior litigation is not identical to that in the instant case. In *Michigan Oil Co v Natural Resources Comm, supra,* the Supreme Court was solely concerned with whether the NRC had the statutory authority to refuse Michigan Oil the drilling permits.

Because it held that the NCR was within its statutory authority in refusing the permit, the majority never reached the merits of the issue in the present case, that is, whether Michigan Oil, because of the delays encountered by the denial of the permits, should be granted an extended lease term. That the merits of this precise issue were not addressed by the majority is explicitly pointed out in Justice LEVIN's dissent. 406 Mich 34-35.

In support of their position that res judicata bars the present issue, defendants point out that Justices Levin and Ryan in their dissenting opinions concluded that the refusal to grant the permits was not within the NRC's statutory authority and that they would order an extension of the lease and remand for hearings under what they deemed was the controlling legislation. However, we would instruct defendants that whether the minority opinion includes in its remedy the equitable relief sought herein is not determinative of whether the present issue is barred by res judicata or collateral estoppel.

This Court follows the rule that "it is the judgment entered upon such appeal which concludes the parties, and that the parties are not bound by opinions or statements of the court seeking to define the extent to which such judgment shall prejudice the rights of the parties in other actions". (Citations omitted.) *Jackson v Consumers Power Co,* 312 Mich 437, 451; 20 NW2d 265 (1945).

The genesis of the prior litigation was the 1972 refusal of the DNR to grant to plaintiffs the drilling permits. Because the denial took place six years before the terms of the lease would expire, there was no need to ask for an extension of the lease at that time. Accordingly, the trial court in the prior case was asked only to review the DNR's denial of the permits. It was not asked to determine whether the lease term should be extended. Indeed, it appears that plaintiffs could not have raised this issue before the trial court as it was not yet ripe for adjudication.[6] Until it became apparent that drilling could not commence before the

---

[6] "Courts of construction will not proceed to pass upon questions which are abstract or academic, or in anticipation of events or conditions which may never materialize." (Citations omitted.) *Wolverine Mutual Motor Ins Co v Clark,* 277 Mich 633, 647; 270 NW 167 (1936).

expiration of the lease because the permits were not obtainable, the present controversy did not arise.

By the time the prior case reached the Supreme Court, the issue was in existence because the lease had expired. However, the issue was never tried by any trier of fact. Therefore, the reference in the minority opinions of the Supreme Court to the present issue can be no more than opinions or statements of the minority seeking to define the extent to which the judgment of the majority might prejudice the rights of Michigan Oil in another action. *Jackson v Consumers Power Co, supra.*

Given that in the prior action the present issue was neither actually litigated nor determined and that plaintiffs could not have raised the as-of-then unripe issue in the trial court, we conclude that neither res judicata nor collateral estoppel bars the adjudication of the issue here.

The next issue we address is whether the defendants stated a valid defense to plaintiffs' complaint thereby defeating plaintiffs' summary judgment motion pursuant to GCR 1963, 117.2(2). A motion for summary judgment based on subsection 2 of GCR 1963, 117.2, failure to state a valid defense, tests the legal sufficiency of the pleaded defense by reference to the pleadings alone. *Hanon v Barber,* 99 Mich App 851, 854; 298 NW2d 866 (1980); *Durant v Stahlin,* 375 Mich 628, 644; 135 NW2d 392 (1965). Accepting all well-pled allegations as true, the proper test under this subsection is whether defendant's defenses are so clearly untenable as a matter of law that no possible factual development could deny plaintiff's right to recovery. *Hanon v Barber, supra.*

In general, one can defeat summary judgment for failure to state a valid defense by denying the

material facts of an allegation. *Hanon v Barber, supra,* citing *August v Poznanski,* 383 Mich 151, 155; 172 NW2d 807 (1970); Bashara, *The Elusive Summary Judgment Rule,* 1976 Det Col L Rev 397, 409-410.

Defendants in the case at bar contend that they stated a valid defense because they denied that plaintiffs are entitled to extensions of the leases. Defendants argue that plaintiffs' refusal to enter into the consent order providing for environmental controls on the drilling operations evidences that plaintiffs did not prosecute the drilling operations with reasonable diligence and good faith under the relevant lease provisions and justifies the denial of the extensions.

We find that defendants' stated defense is not based upon the denial of a material allegation but a conclusion of law. Because the facts are not in dispute and defendants have failed to demonstrate a valid defense, it was proper for the trial court to grant summary judgment for plaintiffs under GCR 1963, 117.1(2).

Because no material facts are disputed we also find no error in summary disposition of this issue under subsection 3 of the summary judgment rule. A motion for summary judgment based on GCR 1963, 117.2(3) is proper only where there are no material issues of fact and the trial court may determine as a matter of law the appropriate disposition of the claim. *Reeder v Hammond,* 125 Mich App 223, 227; 336 NW2d 3 (1983). Because the motion tests the factual support for a claim, before summary judgment may be granted, the trial court must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome. *Brooks v Reed,* 93 Mich App 166, 170; 286 NW2d 81 (1979), *lv den* 411 Mich 862 (1981).

In the case *sub judice* the only issue presented to the trial court was the equitable issue of whether the plaintiffs were entitled to extensions of the leases based on the uncontroverted facts of this case. Defendants have never disputed that plaintiffs would not have been allowed a drilling permit unless there was a capitulation to the terms and conditions of the consent order. Indeed, Arthur Slaughter, who was Assistant Supervisor of Wells from 1971 to 1981, confirmed this fact in his deposition.

Nor do we find any error in the manner in which the trial court resolved this issue. The relief sought by plaintiffs in this matter has been granted to lessees under analogous circumstances.[7] Moreover, equity abhors a forfeiture. *Hull v Hostettler,* 224 Mich 365, 369; 194 NW 996 (1923). A forfeiture is defined as "a deprivation or destruction of a right in consequence of the nonperformance of some obligation or condition". Black's Law Dictionary (5th ed), pp 584-585. Because the leases at issue in this matter provide for extension beyond the 10-year primary term on the condition that "drilling operations * * * are prosecuted with reasonable diligence and good faith", if the extensions are not granted because of plaintiffs' inability to commence drilling, an archetypical forfeiture will result. Accordingly, we find no error in the trial court's conclusion.

Affirmed.

---

[7] See *e.g., Mobil Oil Corp v Kelley,* 353 F Supp 582 (SD Ala, 1973), aff'd 493 F2d 784 (CA 5, 1974), *cert den* 419 US 1022; 95 S Ct 498; 42 L Ed 2d 296 (1974) (where the lessee was entitled to have terms of an oil and gas lease issued by the state extended for that period during which the state oil and gas board refused to issue a drilling permit); *State ex rel Porteril v Grace,* 184 La 443; 166 So 133 (1936) (where drilling operations under mineral leases were disrupted by an unsuccessful suit against the lessee, the lessee was entitled to an extension equal to the time during which litigation was pending for the beginning of operations).