## DOW CHEMICAL COMPANY v CURTIS

Docket No. 86463. Submitted January 6, 1987, at Lansing. Decided March 3, 1987. Leave to appeal applied for.

Irvin Curtis and 485 other employees of Dow Chemical Company refused to work when their union called a strike on March 18, 1974. They filed claims for unemployment benefits, which the Employment Security Commission granted. The record showed that all claimants found interim employment prior to June 9, 1974, the date the Employment Security Act was amended to specify the method for determining whether a claimant had terminated the labor dispute disqualification for benefits. Dow appealed and the Midland Circuit Court, Paul J. Clulo, J., affirmed. Dow appealed.

The Court of Appeals *held:*

1. The MESC is not bound by either the doctrine of collateral estoppel or the doctrine of res judicata to follow its own prior decision in a similar case.

2. No error of law occurred in the declination to apply the June 9, 1974, amendment retroactively.

3. The MESC did not err in failing to redetermine each claimant's eligibility each week for the weeks commencing June 9, 1974.

Affirmed.

1. WORDS AND PHRASES — RES JUDICATA.

The doctrine of res judicata bars not only those claims that were litigated in an earlier action but also those claims arising out of the same transactions which a plaintiff could have brought, but did not.

REFERENCES

Am Jur 2d, Judgments §§ 394 *et seq.;* 404 *et seq.;* 529 *et seq.*

Am Jur 2d, Statutes §§ 2, 347 *et seq.*

Am Jur 2d, Unemployment Compensation §§ 23, 78 *et seq.*

Comment Note.—General principles pertaining to statutory disqualification for unemployment compensation benefits because of strike or labor dispute. 63 ALR3d 88.

See also the annotations in the Index to Annotations under Collateral Estoppel; Privity; Res Judicata; Statutes.

2. Estoppel — Collateral Estoppel.

Collateral estoppel bars the relitigation of issues which have been actually determined in a prior lawsuit between the parties or their privies.

3. Words and Phrases — Privity.

Privity is mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.

4. Unemployment Compensation — Employment — Employment Security Act.

The definition of "employment" in the Employment Security Act is service, including service in interstate commerce, performed for remuneration or under a contract for hire, written or oral, express or implied (MCL 421.1 *et seq.;* MSA 17.501 *et seq.*).

5. Statutes — Prospectivity — Retroactivity.

Generally, statutes operate prospectively only except where the contrary clearly appears from the context of the statute itself; statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intention is manifested.

6. Statutes — Judicial Construction — Amendments.

An amendment to a statute is to be construed as changing the meaning of the statute unless a different intent is manifest.

7. Unemployment Compensation — Employment Security Act — Labor Dispute Disqualification.

The purpose of the Employment Security Act is to aid persons while they are able and available to work but, through no fault of their own, cannot obtain employment; the purpose of the section of the Employment Security Act which includes the labor dispute disqualification is to list circumstances under which the Legislature holds that persons are not entitled to benefits because they are not unemployed through no fault of their own (MCL 421.29; MSA 17.531).

8. Unemployment Compensation — Employment Security Act — Labor Dispute Disqualification.

Section 29 of 1974 PA 104, which raised the standard for terminating the labor dispute disqualification from unemployment benefits eligibility, was effective June 9, 1974, and should be applied prospectively only (MCL 421.1 *et seq.;* MSA 17.501 *et seq.*).

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann* and *Eli Grier*), for Dow Chemical Company.

*Kim Arthur Siegfried,* for the claimants.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *David A. Voges,* Assistant Attorney General, for the Employment Security Commission.

Before: Hood, P.J., and Beasley and L. Townsend,* JJ.

Hood, P.J. In this appeal, Dow Chemical Company challenges 486 separate decisions of the Michigan Employment Security Commission Board of Review granting applications for unemployment benefits. The claimants were all members of the United Steel Workers of America, AFL-CIO-CLC and employees of Dow.

The facts are not in dispute. On March 18, 1974, approximately five thousand hourly workers at Dow's Midland plant struck the plant. Many of those employees, including the 486 claimants involved in this appeal, filed applications with the MESC for unemployment benefits. All claims were denied as a result of the labor dispute disqualification in § 29(8) of the Michigan Employment Security Act, MCL 421.1 *et seq.;* MSA 17.501 *et seq.,* which at that time provided:

> (8) An individual shall be disqualified for benefits for any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by such labor dispute, in the establishment in which he is or was last employed, or to

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

a labor dispute (other than a lockout) in active progress, or to shutdown or start-up operations caused by such labor dispute, in any other establishment within the United States which is functionally integrated with such establishment and is operated by the same employing unit. No individual shall be disqualified under this subsection 29(8) if he is not involved in such dispute. [MCL 421.29; MSA 17.531.]

Many striking employees then obtained other employment for wages. A summary of the claimants' employment was contained as exhibit c to Dow's brief in the trial court and as appendix c to Dow's brief on appeal. At the hearing in the circuit court, all parties agreed that the summary was fairly accurate and we will so treat it for the purposes of this appeal. The summary indicated that in the vast majority of cases the claimant worked for only a few days prior to June 9, 1974. In a significant number of other cases, the claimant worked for only a few hours prior to June 9, 1974. The June 9, 1974, date was important because § 29(8) of the MESA was amended by 1974 PA 104, effective June 9, 1974. That amendment changed the earlier version of § 29(8) (1974 PA 11, effective February 15, 1974) by adding the following criteria to ascertain whether a claimant had terminated the labor dispute disqualification:

An individual's disqualification imposed or imposable under this subsection shall be terminated by his performing services in employment with an employer in at least 2 consecutive weeks falling wholly within the period of his total or partial unemployment due to the labor dispute, and in addition by earning wages in each of those weeks in an amount equal to or in excess of his actual or potential weekly benefit rate with respect to those weeks based on his employment with the employer involved in the labor dispute.

Approximately seventeen hundred striking employees, including the claimants, reapplied for unemployment benefits following their employment with other employers during the strike period, contending that their interim employment terminated the labor dispute disqualification of § 29(8) of MESA. For each of the 486 claims at issue in this appeal, the MESC initially found that the claimant's interim employment terminated the labor dispute disqualification. Dow appealed these determinations and after consideration by referees all 486 of the decisions in question were decided adversely to Dow.[1]

The hearings before the four hearing referees commenced in 1974. Most of their decisions were entered between July and December, 1977. The MESC's certified record in this case consisted of 86 volumes, and over 32,000 pages. From that record it seems that the claimants understood or heard rumors that they would be able to obtain employment benefits simply by working for another employer during the strike. In fact, at least six claimant-appellees worked for Manpower, which was engaged in the business of supplying employees purely on a temporary basis. In each case, the referees held that the claimant's acceptance of other employment terminated their § 29(8) disqualification.

Dow sought review by the MESC Board of Review, and board of review decisions, in each case granting unemployment benefits, were rendered between June, 1980, and April, 1981. Dow's requests for rehearing were denied in separate orders entered on May 29, 1981. Dow then filed a consolidated appeal in the Midland Circuit Court. In a judgment dated July 8, 1985, the MESC Board

[1] Four MESC referees were involved in the initial decisions in the 486 cases.

of Review's orders were affirmed and Dow appeals as of right. Dow raises several claims of error, none of which warrant reversal.

This Court may review questions of law or fact on appeal from decisions of the board of review, but can reverse only if the order or decision is contrary to law or not supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 421.38; MSA 17.540. If there is no dispute as to underlying facts, questions presented on appeal are to be treated as matters of law. *Gormley v General Motors Corp,* 125 Mich App 781, 785; 336 NW2d 873 (1983). The same standard applies to the circuit court's review of the board of review's decisions. See *Farrell v Automobile Club of Michigan,* 148 Mich App 165, 168; 383 NW2d 623 (1986).

In *Bridgewater v Dow Chemical Corp,* MESC Appeal Docket No. B 72-5295-43101, decided June 27, 1975, which involved a prior strike the MESC Appeal Board (now board of review) took the position that a claimant's interim employment must be "bona fide" and satisfy the criteria established by 1974 PA 104. That decision was subsequently affirmed by the Ingham Circuit Court. Dow asserts that the MESC is therefore bound under the doctrines of res judicata and collateral estoppel to follow its prior decision in *Bridgewater* in this case.

We first note that Dow did not make this claim before the MESC although it did raise the claim in its appeal to the circuit court. These issues should have been raised during the administrative proceedings. Dow's failure to raise the issues before the board of review precluded their consideration by the circuit court and precludes consideration by us. *Ackerburg v Grant Community Hospital,* 138 Mich App 295, 299; 360 NW2d 599 (1984).

Even were we to consider these issues, we would find them meritless. The doctrine of res judicata is broadly applied to bar not only claims actually litigated in a prior suit, but also those claims arising out of the same transaction which the plaintiff could have brought, but did not. By comparison, collateral estoppel bars the relitigation of issues which have been actually determined in a previous lawsuit between the parties or their privies. *Michigan Oil Co v Dep't of Natural Resources,* 148 Mich App 745, 753; 384 NW2d 777 (1985).[2]

The case at bar is factually distinct from *Bridgewater.* A different Dow strike, different claims, and different MESC orders and decisions are at issue. The only significant similarity between *Bridgewater* and this case is the fact that the same underlying legal issue is involved. Even assuming that Dow could raise the defense of res judicata and collateral estoppel against MESC in an administrative appeal proceeding, these doctrines have no application to this case. As MESC correctly asserts, Dow could at best argue stare decisis. However, we are not required to perpetuate legal error simply because the MESC or a circuit court reached a particular result in a prior opinion.[3]

Dow's argument that res judicata or collateral estoppel doctrines apply is based on its contention that the claimants are in privity with the claimants in *Bridgewater* as a result of their common union membership. In *Sloan v Madison Heights,*

[2] An exception to the doctrine of res judicata may exist where a question of law is raised and resolution of the issue is necessary to avoid an inequitable administration of the law, *Socialist Workers Party v Secretary of State,* 412 Mich 571; 317 NW2d 1 (1982), but such is not the case here.

[3] We note that, in regard to possible recovery of benefits paid, the case is moot as to the claimants because the three-year limitations period for the MESC to recover improperly paid benefits has long expired. MCL 421.62(a); MSA 17.566(a).

425 Mich 288, 295-296; 389 NW2d 418 (1986), "privity" was defined as follows:

> In its broadest sense, privity has been defined as "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Petersen v Fee Int'l Ltd,* 435 F Supp 938, 942 (WD Okla, 1975). This Court has also interpreted a privy as "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession or purchase." *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 43; 191 NW2d 313 (1971).

The doctrine of collateral estoppel requires a "substantial identity" of the parties. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 60 Mich App 606, 611; 231 NW2d 479 (1975), aff'd 399 Mich 449 (1976).

No "substantial identity" or privity has been shown here. The parties involved in both *Bridgewater* and this appeal are the individual claimants and not their union. The Dow strike at issue in *Bridgewater* occurred in 1972; the Dow strike involved in this case occurred in 1974. The fact that the claimants had the same labor organization in both instances or that the MESC was involved is not enough to establish privity. *Bridgewater* has no effect on the eligibility for unemployment benefits of claimants involved in this case.

Dow also claims that the MESC and the circuit court misapplied the law as set forth in *Great Lakes Steel Corp v Employment Security Comm,* 381 Mich 249; 161 NW2d 14 (1968).

In *Great Lakes,* which was decided in 1968, our Supreme Court addressed the labor dispute dis-

qualification in the context of a 1959 strike by employees of Great Lakes Steel Corporation. The version of the statute then in effect was as follows:

> "Sec. 29. (1) An individual shall be disqualified for benefits: . . .
> "(b) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed." CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531). [*Great Lakes, supra,* p 252.]

The controlling issue in deciding whether the labor dispute disqualification had been terminated was the identity of the employees' last employing unit. The general definition of "employment" in MESA, as it existed at the time *Great Lakes* was decided and continuing through the case at bar, was "service, including service in interstate commerce, performed for remuneration or under the contract of hire, written or oral, express or implied." MCL 421.42; MSA 17.545, and *Great Lakes, supra,* p 252.

Our Supreme Court found the definition of "employment" to be clear and unambiguous. Applying that definition to the claimants there, it was held that their interim employment terminated the labor dispute disqualification. The claimants involved in *Great Lakes* were situated similarly to those involved in this case, because they obtained their employment during a strike. The claimants in *Great Lakes* were "laid off" after working a "few days to several weeks." *Great Lakes, supra,* p 251. The Supreme Court did not, as claimed by Dow, find that employment must be "bona fide," but merely referred to that terminology in describing the appeal board's decisions as follows:

The appeal board modified the decision of the referee, holding claimants were disqualified for benefits for the duration of their unemployment arising out of the labor dispute at Great Lakes Steel; further, that when they accepted *bona fide* employment with another employer and were laid off by that employer, claimants would qualify for compensation chargeable to the last interim employer. [*Great Lakes, supra,* p 251. Emphasis in original.]

The term had no significance to the Supreme Court's decision in *Great Lakes,* and has no statutory significance. See this Court's opinion in *Great Lakes,* 6 Mich App 656, 659; 150 NW2d 547 (1967), aff'd 381 Mich 249 (1968). The definition of "employment" being clear, it was simply applied according to its plain meaning. The decision in *Great Lakes* is consistent with the general rule that MESA must be given a liberal construction to afford coverage and a strict construction to effect a disqualification. *Anderson v Top O'Michigan Rural Electric Co,* 118 Mich App 275, 279; 324 NW2d 603 (1982), lv den 417 Mich 958 (1983).

Applying the above principles to the version of the statute in effect on February 15, 1974, we conclude that the MESC was correct in determining that the labor dispute disqualification was terminated by the claimants' interim employment in the present case. The statute being clear, it was properly applied according to its plain meaning. See *Franks v White Pine Copper Division,* 422 Mich 636, 650; 375 NW2d 715 (1985). The MESC and the circuit court were correct in concluding that *Great Lakes* governed in this case.

Dow also claims that 1974 PA 104, the June, 1974, amendment to § 29(8), should have been applied retroactively to these claimants and that the MESC and the circuit court erred as a matter of law in holding otherwise. We disagree.

The general rule in Michigan is that statutes are prospective in their operation except where the contrary clearly appears from the context of the statute itself. *Gormley v General Motors Corp, supra,* p 788. An exception to the general rule is recognized when a statute is remedial or procedural in nature, as "statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intention is manifested." *Franks v White Pine Copper Division, supra,* p 672. Unless a different intent is manifest, an amendment to a statute is construed as changing the meaning of the statute. *Borkus v Michigan National Bank,* 117 Mich App 662, 668; 324 NW2d 123 (1982), lv den 417 Mich 998 (1983).

MESA is remedial in nature. *Kempf v Michigan Bell Telephone Co,* 137 Mich App 574, 582; 358 NW2d 378 (1984), lv den 424 Mich 857 (1985). Its purpose is to aid persons while they are able and available to work but, through no fault of their own, cannot obtain employment. See MCL 421.2; MSA 17.502; MCL 421.8(2); MSA 17.508(2). MESA is intended to benefit only those involuntarily unemployed. The purpose of § 29 of MESA, which includes the labor dispute disqualification, is to list circumstances under which the Legislature holds that a person is not entitled to benefits because the person is *not* involuntarily unemployed. *Baker v General Motors Corp (After Remand),* 420 Mich 463, 478; 363 NW2d 602 (1984), reconsideration den 422 Mich 1201 (1985), aff'd — US —; 106 S Ct 3129; 92 L Ed 2d 504 (1986).

The June 9, 1974, amendment to the statute added a higher standard that a claimant must satisfy in order to terminate the labor dispute

disqualification. The claimant is now required to work at least two consecutive weeks in the interim employment and, in addition, to earn wages "in each of those weeks in an amount equal to or in excess of his actual or potential weekly benefit rate with respect to those weeks based on his employment with the employer involved in the labor dispute." Applying 1974 PA 104 retroactively to claimants who undertook interim employment prior to June 9, 1974, and who could have shown a termination of the labor dispute disqualification under then-existing 1974 PA 11, would have the effect of diminishing their rights to unemployment benefits. Consequently, the general rule in favor of giving retroactive application to remedial statutes is not applicable. Only a clear statement of legislative intent should justify giving retroactive application to this statute.

The "effective date" applicable to § 29(8) of 1974 PA 104 was described in the act, in pertinent part, as follows:

Sec. 66. (1) If this 1974 amendatory act is given immediate effect, the effective date of this amendatory act shall be the first day of the calendar week containing the thirtieth day after it is approved by the governor or becomes law without his approval.

(2) An individual who has a current and unexhausted benefit year on the effective date as provided in subsection (1) shall have his weekly benefit rate and the maximum amount of benefits recomputed in accordance with this amendatory act with respect to any week of unemployment beginning on or after that date or that portion of his benefit rights not exhausted prior to that date but his weekly benefit rate and maximum amount of benefits established and not exhausted prior to the aforementioned effective date shall not be subject to reduction or elimination by the recomputation. . . .

> This act is ordered to take immediate effect.
> Approved May 16, 1974. [1974 PA 104.]

On its face, the amended version of § 19(8) of MESA appears intended to reduce the potential for abuse by striking employees by establishing specific and higher standards which must be satisfied in order to trigger a termination of the labor dispute disqualification. However, no clear legislative intent to give retroactive application to the amended version of the statute is apparent from the language of § 29 of 1974 PA 104 or from the expressly stated date, which was eventually determined to be June 9, 1974. Thus, no error of law occurred in the declination to retroactively apply § 29(8) of 1974 PA 104 to the claimants.

Finally, Dow contends that, since eligibility must be determined weekly, MESC erred as a matter of law in failing to redetermine each claimant's eligibility for the weeks commencing June 9, 1974, the effective date of the statutory amendment. Again, we disagree.

The events or circumstances which triggered the termination of the claimants' disqualification under § 29(8) were their employment, prior to June 9, 1974, by employers other than the employer involved in the labor dispute. A claimant is *eligible* under § 28(1) of the MESA for any week in which the commission finds that the claimant (1) is registered for work, has continued to report to the unemployment office as prescribed by the commission, and is seeking work, unless this requirement is waived by the commission, (2) makes a claim for benefits, and (3) is able and available to perform suitable full-time work of a character for which he is qualified. MCL 421.28; MSA 17.530. The MESC was not required under this statute or under the terms of MCL 421.66; MSA 17.569(16), which es-

tablished the effective dates for 1974 PA 104, to redetermine a claimant's continuing eligibility for unemployment benefits based on whether the claimant terminated the labor dispute disqualification under the higher criteria effective June 9, 1974. Since there is no clear legislative intent requiring such a redetermination, the MESC did not err as a matter of law in not making a redetermination and the circuit court did not err in upholding the MESC's final orders.

For the foregoing reasons, the decision of the circuit court is affirmed.