STEPHEN'S NU-AD, INC v GREEN

Docket No. 99004. Submitted March 14, 1988, at Detroit. Decided
    April 19, 1988.

On February 3, 1986, Howard Green informed his employer
    Stephen's Nu-Ad, Inc., of his intent to quit his job in two weeks.
    On the same date, Green was informed that his employment
    was being terminated immediately. When Green's plans to
    start working for another employer did not materialize, he
    applied for unemployment benefits. The Michigan Employment
    Security Commission, in a determination and redetermination,
    denied the claim, holding that Green was disqualified from
    receiving benefits because he had voluntarily left his employ-
    ment. A referee, following an evidentiary hearing, affirmed the
    commission's denial of benefits. The Michigan Employment
    Security Board of Review reversed the referee's holding, finding
    that Green's termination was not voluntary. The employer
    sought review in Wayne Circuit Court. The circuit court, John
    A. Murphy, J., affirmed the holding of the board of review. The
    employer appealed.

The Court of Appeals *held:*

To characterize Green's termination on February 3, 1986, as
    being voluntary would give a perverse meaning to that word. It
    is clear that his termination on that date was the result of an
    act of his employer. However, by the same token, given Green's
    continued unequivocal expression that he had no intent of
    continuing his employment beyond February 15, 1986, he
    should be disqualified from benefits after that date. Accord-
    ingly, the board of review and the circuit court are affirmed
    with respect to the granting of benefits for the period from
    February 3, 1986, to February 15, 1986, but are reversed with
    respect to the granting of benefits subsequent to February 15,
    1986.

Affirmed in part and reversed in part.

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 59 *et seq.*
See the annotations in the Index to Annotations under Unemploy-
    ment Compensation.

UNEMPLOYMENT COMPENSATION — VOLUNTARY TERMINATION OF EMPLOYMENT — DISQUALIFICATION FROM BENEFITS.

An employee who is immediately discharged from his employment upon giving notice to his employer that he intends to terminate his employment on a date certain in the future is not disqualified from receiving unemployment benefits by reason of the voluntary-quit provision of the Michigan Employment Security Act with respect to the period from the date of his actual termination to the date upon which he intended to terminate his employment; however, where it is clear that the employee was unequivocal in his intent to leave his employment on the specified date, such employee is disqualified from receiving unemployment benefits by reason of the voluntary-quit provision for the period after the date upon which the employee intended to discontinue his employment (MCL 421.29[1][a]; MSA 17.531[1][a]).

*Charles H. Lane,* for Stephen's Nu-Ad, Inc.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Donna K. Welch,* Assistant Attorney General, for Michigan Employment Security Commission.

Before: WAHLS, P.J., and R. M. MAHER and G. S. ALLEN,* JJ.

PER CURIAM. In this unemployment benefits case, the employer, Stephen's Nu-Ad, Inc., appeals from a circuit court's affirmance of a decision by the Michigan Employment Security Board of Review finding the claimant-employee, Howard Green, not disqualified for unemployment benefits under the voluntary-quit provision of the Michigan Employment Security Act, MCL 421.1 *et seq.;* MSA 17.501 *et seq.* We affirm in part and reverse in part.

The record reveals that claimant worked at Stephen's Nu-Ad for almost two years and that on

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

February 3, 1986, he informed the owner of the company, Louis Stephen, that in two weeks he intended to quit his job. At that time, claimant had plans to start working for another employer after the expiration of the two-week notice period. In the afternoon of February 3, 1986, perhaps two hours after claimant had informed Louis Stephen of his intention to quit his job in two weeks, claimant was informed by his supervisor, William Lane, that his employment with Stephen's Nu-Ad was being immediately terminated.[1] Unfortunately, claimant's plans to start working for another employer were never realized; instead, claimant applied for unemployment benefits. The Michigan Employment Security Commission, in a determination and redetermination, denied claimant benefits on the basis of his having voluntarily left his employment with Stephen's Nu-Ad without good cause attributable to the employer. MCL 421.29(1)(a); MSA 17.531(1)(a). A referee, after conducting a hearing on April 3, 1986, affirmed the commission's redetermination.[2] After the board of

[1] At the referee hearing, claimant stated that he told Louis Stephen that he intended to quit his job in two weeks. Claimant's supervisor, William Lane, testified that he had "heard that [claimant] was leaving the company" and that he assumed claimant intended his notice of termination to be effective immediately. According to Lane, claimant had merely offered to stay on the job another two weeks to accommodate, if necessary, the needs of the company. Since the company had made arrangements to replace claimant with another individual, Lane stated, he informed claimant that the company "was not going to take him up on the two weeks." Louis Stephen was not present at the referee hearing to testify regarding his conversation with claimant on February 3, 1986.

The referee found: "After giving, [a two-week] notice, the Claimant was advised that he did not need to work out his notice period and was separated as of the same date." Since it is not a function of a reviewing court to resolve anew conflicts in the evidence or to redetermine the credibility of the witnesses, we accept the referee's finding of fact on this issue. *Butcher v Dep't of National Resources,* 158 Mich App 704, 707; 405 NW2d 149 (1987); *Taylor v United States Postal Service,* 163 Mich App 77, 83; 413 NW2d 736 (1987).

[2] The referee relied on the case of *Beverly Webb,* B73-3236-42982,

review reversed the referee,[3] the employer appealed to the Wayne Circuit Court, which, on February 10, 1987, issued an opinion and order affirming the board of review. The instant appeal ensued.

This Court may review questions of law or fact on appeal from the board of review but will not disturb a decision of the board unless it is contrary to law or unsupported by competent, material and substantial evidence on the record as a whole. Const 1963, art 6, § 28; MCL 421.38; MSA 17.540; *Leesberg v Smith-Jamieson, Inc,* 149 Mich App 463, 465; 386 NW2d 218 (1986).[4] In this case, the board of review concluded that claimant was not disqualified for benefits under § 29(1)(a) of the Michigan Employment Security Act, which provides: "An individual shall be disqualified for benefits [where] . . . the individual . . . [l]eft work voluntarily without good cause attributable to the employer or employing unit."

The facts in this case, as well as the remedial nature of the Michigan Employment Security Act, lead us to conclude that, under the limited standard of appellate review applicable, we should not disturb the decision of the board of review. The

for the proposition that an employee who is discharged for giving notice of an intent to leave work at a future date must be considered as having voluntarily left his or her employment since the discharge in such a situation is brought about as a direct result of the employee's own action. In its appellate brief in support of the employer's position on this issue, the Michigan Employment Security Commission cites a line of Pennsylvania cases for this same proposition. See, e.g., *Lovrekovic v Unemployment Compensation Board of Review,* 36 Pa Comm 364; 387 A2d 685 (1978).

[3] The board of review relied on the case of *Miller (Visiting Nurse Association),* 1978 BR 54236 (B76-17052), for the proposition that, "when an employee is discharged for giving notice of an intent to leave his work at a future date, his leaving is involuntary."

[4] This same standard of review for decisions from the Michigan Employment Security Board of Review is applicable in instances of review at the circuit court level. *Dow Chemical Co v Curtis,* 158 Mich App 347, 352; 404 NW2d 737 (1987), lv gtd 428 Mich 911 (1987).

facts disclose that on February 3, 1986, claimant informed his employer of his intent to voluntarily quit his job in two weeks and that, prior to the lapse of that two-week period, his employer discharged him. Claimant's notice of intent to quit his job in two weeks did not immediately alter his status as an employee of Stephen's Nu-Ad. But for the discharge effected by his employer, claimant would have continued working until the end of the two-week period. Apparently, claimant was under no obligation to give his employer any notice of his intent to quit; such notice was provided, it seems, purely for reasons of courtesy and consideration for the employer. In return for his courtesy, claimant was fired.

A panel of this Court, commenting on the voluntary-quit provision in the Michigan Employment Security Act, has observed: "The Legislature's use of the term 'voluntary' is clear and requires application." *Leeseberg, supra,* p 466. We agree. In the present case, we would render perverse the meaning of the word "voluntary" by concluding that claimant voluntarily left his job.[5] In no way was claimant's separation from his employment on February 3, 1986, the result of an unrestrained, volitional, freely chosen, or wilfull action on the part of claimant. The notice of an intention to permanently leave work in two weeks is not notice of an intention to permanently leave work immediately. If an employer so chooses to treat the former identically with the latter—which, of course, is an employer's prerogative—this does not transmute, for purposes of the Michigan Employment Security Act or otherwise, the employee's

---

[5] If we were to adopt the employer's reasoning on this issue, we would be, we fear, as solipsistic as Humpty Dumpty, who declared, "When I use a word . . . it means just what I choose it to mean—neither more nor less." Lewis Carroll: *Through the Looking Glass,* Chapter VI.

premature separation from his or her job into a voluntary action on the part of the employee. After being fired, the only choice left to claimant regarding whether to stay at, or to leave, his employment was of the Hobson's variety.

Our decision to affirm the circuit court's affirmance of the board of review's order in this case is further buttressed by the remedial nature of the Michigan Employment Security Act. The act is intended to benefit those who are involuntarily unemployed, MCL 421.2; MSA 17.502, MCL 421.8(2); MSA 17.508(2), *Dow Chemical Co v Curtis,* 158 Mich App 347, 357; 404 NW2d 737 (1987), lv gtd 428 Mich 911 (1987); *Degi v Varano Glass Co,* 158 Mich App 695, 699; 405 NW2d 129 (1987), and must be given a liberal construction to afford qualification and a strict construction to effect disqualification. *Anderson v Top O'Michigan Rural Electric Co,* 118 Mich App 275, 279; 324 NW2d 603 (1982), lv den 417 Mich 958 (1983). Our decision is also buttressed by the repeated rejection by courts of this state of the doctrine of "constructive voluntary leaving" in cases in which a claimant is actually discharged by an employer. *Copper Range Co v Unemployment Compensation Comm,* 320 Mich 460, 469-470; 31 NW2d 692 (1948); *Employment Security Comm v Children's Hospital of Michigan,* 139 Mich App 525, 530-531; 362 NW2d 819 (1984); *Ackerberg v Grant Community Hospital,* 138 Mich App 295, 299-300; 360 NW2d 599 (1984).

On appeal, the employer and the Michigan Employment Security Commission argue in the alternative that claimant is entitled to unemployment benefits only for the period between February 3 and February 15, 1986, because claimant announced his intention to quit his job on the latter

date. In light of the specific facts and circumstances presented in this case, we agree.

At the referee hearing conducted on April 3, 1986, claimant testified that on February 3, 1986, when he spoke to Louis Stephen, the owner of Stephen's Nu-Ad, he gave Stephen a two-week notice and "told him [that on] February 15th I would be gone." He also acknowledged that on February 3, 1986, after informing Louis Stephen of his intent to quit working in two weeks, Stephen asked him to continue in his employment. Claimant, pertinacious and unequivocal in his aim, declined Stephen's offer of continued employment. Indeed, claimant remained steadfast in his resolve after his discharge on February 3, 1986, after the expiration of the ensuing two weeks, and even after the Michigan Employment Security Commission determined him to be disqualified for benefits. On February 24, 1986, claimant was personally served with a copy of the commission's unfavorable determination, and on that same date he filed a request for redetermination. In the portion of claimant's request for redetermination entitled "Claimant's Statement," claimant, in his own handwriting, declared, "I would not return back to work with Nu-Ad Inc. because the wages are too low." Under other circumstances, where an intent to quit is not so unambiguously, incontestably and continuously asserted by the claimant—i.e., where we can only speculate as to whether the claimant in fact intended to leave work on a certain date subsequent to having been terminated—it may be appropriate not to limit eligibility under § 29(1)(a) for a specified period. See *Ackerberg v Grant Community Hospital, supra,* pp 300-301. In this case, however, claimant's own persistent and irrefragable declarations render unnecessary any speculation on this issue. Without doubt, claimant

tendered his resignation, to be effective on February 15, 1986; that resignation was accepted by the employer; and claimant persisted, even after February 15, 1986, to abide by his decision to separate himself from employment with Stephen's Nu-Ad. Just as we could not distort the meaning of the word "voluntary" in order to characterize claimant's discharge on February 3, 1986, as an action voluntarily taken by claimant, we cannot distort that meaning to characterize his separation from employment after February 15, 1986, as anything but voluntary on his part.[6]

The circuit court's affirmance of the board of review is affirmed as applied to the period between February 3 and February 15, 1986, and reversed as applied to the period after February 15, 1986. No costs.

---

[6] " 'The question is,' said Alice, 'whether you *can* make words mean so many different things.'

" 'The question is,' said Humpty Dumpty, 'which is to be master— that's all.' " *Op cit,* n 5.