DOW CHEMICAL COMPANY v CURTIS

Docket No. 80516. Argued December 9, 1987 (Calendar No. 8). Decided
    October 17, 1988.

Irwin Curtis and 485 other employees of the Dow Chemical
    Company, while on strike against Dow in 1974 and without
    resigning their employment, obtained short-term interim em-
    ployment with other employers which lasted on average less
    than two days. The strikers then filed claims for unemployment
    compensation, contending that the interim employment termi-
    nated the labor dispute disqualification provision of the Em-
    ployment Security Act. While the strike was still in progress
    and the claims were pending before the Employment Security
    Commission, the labor dispute disqualification provision was
    amended by 1974 PA 104, making clear that claimants simi-
    larly situated were ineligible for benefits. The commission, after
    the effective date of the amendment, granted benefits, finding
    that the interim employment terminated the labor dispute
    disqualification in each case, and that corresponding charges
    should be placed against Dow's rating account. The Board of
    Review affirmed. The Midland Circuit Court, Paul J. Clulo, J.,
    affirmed. The Court of Appeals, Hood, P.J., and Beasley and
    J. E. Townsend, JJ., affirmed, finding that only a clear state-
    ment of legislative intent should justify retroactive application
    of the amended labor dispute disqualification provision (Docket
    No. 86463). The plaintiff appeals.

    In an opinion by Justice Griffin, joined by Chief Justice
    Riley and Justices Levin and Brickley, the Supreme Court
    held:

    1974 PA 104 governs benefit eligibility for benefit weeks
    following June 9, 1974, its effective date. Claims made for
    benefit weeks after the effective date of the amendment are
    controlled by the new criteria set forth in the amendment. In

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 2000 et seq.

Am Jur 2d, Unemployment Compensation §§ 32 et seq., 67.

General principles pertaining to statutory disqualification for unem-
    ployment compensation benefits because of strike or labor dis-
    pute. 63 ALR3d 88.

the absence of any clear indication by the Legislature that retrospective application was intended, the MESC properly charged Dow's rating account for benefits paid prior to the effective date of the amendment. The amendment also precludes any charge against Dow's rating account for benefits paid with respect to benefit weeks after its effective date, in light of the fact that none of the claimants met the new criteria for terminating the labor dispute disqualification.

1. Section 29(8) of the Employment Security Act was amended by 1974 PA 104 to restore its viability in the wake of the decision in *Great Lakes Steel Corp v Employment Security Comm,* 381 Mich 249 (1968), that interim employment of a few hours or days of work with other employers accepted by strikers was sufficient to terminate the disqualification. The act, as amended, supplies objective criteria for evaluating the substantiality of interim employment. In the absence of any clear indication by the Legislature that retrospective application was intended, the MESC in this case properly charged Dow's rating account for benefits paid to the employees with respect to benefit weeks prior to the effective date of the amendment. The amendment also precludes any charge against Dow's rating account for benefits paid with respect to benefit weeks after its effective date in light of the fact that none of the claimants met the new criteria for terminating the labor dispute disqualification.

2. Unemployment benefits are a matter of statutory grace. Under the act, an employer may request a redetermination of eligibility or qualification for benefits. The act is structured so that if the law changes, or if facts change, an interested party has the right to demand that both eligibility and qualification be determined anew. In this case, Dow made a timely protest of the eligibility and qualification of each claimant for each week of the strike. Initial determinations of claims for benefits on the basis of interim employment prior to the effective date of the amendment did not constitute final adjudications. Claims for benefit weeks after the effective date of the amendment are controlled by the new criteria.

Justice ARCHER, concurring, stated that on the basis of statutory and case law existing prior to the effective date of 1974 PA 104, the striking employees had properly terminated their disqualification by obtaining interim employment. Accordingly, the Michigan Employment Security Commission is entitled to charge Dow Chemical Company's MESC rating account for charges corresponding to benefits paid to striking workers prior to the effective date of the amendment. However, 1974 PA 104 is correctly applied to preclude charges to Dow's rating account

for benefits paid after the effective date of the amendment. The result is mandated by the unique statutory scheme embodied in the MESA.

Reversed and remanded.

Justice CAVANAGH, joined by Justice BOYLE, dissenting, stated that an employee's right to unemployment compensation accrues on the date of unemployment. When determining a claimant's eligibility for benefits, the applicable law is the law in effect on the date of unemployment, not the law in effect on the dates that benefits become due and payable. Because 1974 PA 104 specifically does not provide for prospective or retrospective application, it must be applied prospectively. The act should not be applied to allow redetermination of a claimant's initial eligibility for benefits for benefit weeks commencing on or after the effective date of the amendment, however. A claimant's unemployment gives rise to the right to receive unemployment benefits. An amendatory act entitled to prospective application in an unemployment compensation case should be applied to claims on the basis of unemployment dates occurring on or after the effective date chosen by the Legislature. In this case, because the striking workers successfully terminated their disqualification for unemployment benefits by performing interim employment, their right to the benefits accrued prior to the effective date of 1974 PA 104, and their initial eligibility for benefits may not be redetermined.

Justice BOYLE, dissenting, stated that, consistent with the legislative assumptions at the time of enactment and prior case law, the applicable law for determining eligibility for unemployment compensation under the Employment Security Act is presumed to be the law in effect on the date of unemployment.

Unemployment compensation essentially is an insurance scheme: the systematic accumulation of funds, on the basis of actuarial studies, during periods of employment provides benefits during periods of unemployment. The history of the Employment Security Act indicates a consistent assumption on the part of the Legislature that the applicable law is the law in effect on the date of unemployment, i.e., the date of accrual, not the date of each payment. Consistent with the insurance nature of the unemployment compensation scheme and the Supreme Court's prior decisions, the Legislature presumes that substantive rights under the act accrue as of the date of unemployment. Because the amendment of § 29(8) affected substantive rights, the amendment should be applied only prospectively.

158 Mich App 347; 404 NW2d 737 (1987) reversed.

UNEMPLOYMENT COMPENSATION — EMPLOYMENT SECURITY ACT —
    LABOR DISPUTE DISQUALIFICATION — RATING ACCOUNT CHARGES.

The amendment of the labor dispute disqualification provision of
    the Employment Security Act, 1974 PA 104, which provides
    new objective criteria for evaluating the substantiality of in-
    terim employment of striking workers, governs benefit eligibil-
    ity for benefit weeks following June 9, 1974, its effective date,
    permitting the Employment Security Commission to properly
    charge an employer's rating account for benefits paid prior to
    the effective date and precluding charges against the account
    for benefits paid with respect to benefit weeks after the effec-
    tive date (MCL 421.29[8]; MSA 17.531[8]).

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ell-
mann* and *Eli Grier*) for Dow Chemical Company.

*Kim Arthur Siegfried* for Irvin Curtis, et al.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *David A. Voges,*
Assistant Attorney General, for Michigan Employ-
ment Security Commission.

Amicus Curiae:

*Jordan Rossen,* General Counsel, and *Richard
W. McHugh,* Associate General Counsel, for Inter-
national Union, UAW.

GRIFFIN, J. In 1974, while on strike against the
Dow Chemical Company, 486 of Dow's employees
arranged with other employers to perform interim
jobs which lasted, on the average, less than two
days, for the purpose of qualifying for unemploy-
ment compensation. While the strike was still in
progress and claims by the 486 employees for
unemployment benefits were pending before the
Michigan Employment Security Commission, the

Legislature amended[1] § 29(8), the labor dispute disqualification provision of the Michigan Employment Security Act,[2] and made clear that similarly situated claimants are ineligible. In this appeal, we are required to decide whether the statutory change is applicable to the 486 claims at issue in this case. Although reclamation of unemployment benefits awarded by the commission and already paid to these employees is now barred by limitations imposed by statute,[3] we hold that 1974 PA 104 operates to preclude any charge against Dow's rating account[4] for benefits paid with respect to benefit weeks after the effective date of the amendment, June 9, 1974.

I

The facts are not in dispute. In accordance with the call of their union, United Steel Workers of America, AFL-CIO-CLC, approximately 5,000 hourly workers struck Dow on March 18, 1974, in a dispute over wages and working conditions. During the strike period, which continued until September 9, 1974, none of the employees involved in this appeal resigned from their employment with Dow. Each claimant's regular work with Dow remained available to him throughout the strike, and each striker retained certain pension rights and seniority status with Dow.

Many of the striking employees, including the 486 involved in this appeal, filed claims for unemployment compensation. Initially, the MESC issued determinations disqualifying all claimants from

[1] 1974 PA 104.

[2] MCL 421.1 *et seq.;* MSA 17.501 *et seq.*

[3] MCL 421.62(a); MSA 17.566(a) precludes recovery of improperly paid benefits from an individual more than three years after the date of receipt, except under circumstances that are not applicable.

[4] MCL 421.20(a); MSA 17.521(a).

benefits by reason of § 29(8) of the act, which at that time (March, 1974) provided:

> An individual shall be disqualified for benefits for any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by such labor dispute, in the establishment in which he is or was last employed, or to a labor dispute (other than a lockout) in active progress, or to shutdown or start-up operations caused by such labor dispute, in any other establishment within the United States which is functionally integrated with such establishment and is operated by the same employing unit. No individual shall be disqualified under this subsection 29(8) if he is not involved in such dispute.

Thereafter, upon the advice of their union, the 486 claimants involved in this appeal obtained short-term employment from other employers, and then filed again for unemployment benefits, contending that their brief interim employment had the effect of terminating the § 29(8) labor dispute disqualification.

It is undisputed that the nature and duration of the interim work performed by each of the claimants are accurately described in a summary of cases attached to Dow's brief on appeal. The summary indicates that the average time worked by the claimants prior to June 9, 1974, the effective date of the amendment of § 29(8), was less than two days; in many instances, claimants worked for only a few hours.[5] Although all of the claimants

---

[5] For example, one employee worked at a concrete business owned by his sister for eight hours at $3.10 per hour, hanging a door; another employee was hired by his brother-in-law to work as a gas station attendant for less than two days at $2.00 per hour; yet another striker accepted five hours of work fixing a fence for his brother-in-law at his restaurant. Other "interim employment" by the

received remuneration for work performed, virtually none earned an amount equivalent to their unemployment compensation rate for the week.

As indicated above, while the Dow strike was in progress, the Legislature amended § 29(8) of the MESA[6] and thereby added certain criteria to be applied in determining whether subsequent employment operates to terminate the labor dispute disqualification:

> An individual's disqualification imposed or imposable under this subsection shall be terminated by his performing services in employment with an employer in at least 2 consecutive weeks falling wholly within the period of his total or partial unemployment due to the labor dispute, and in addition by earning wages in each of those weeks in an amount equal to or in excess of his actual or potential weekly benefit rate with respect to those weeks based on his employment with the employer involved in the labor dispute.

Accordingly, under the amendment the labor dispute disqualification could be avoided only by working for another employer for at least two consecutive weeks and for wages for each such week equal to or in excess of the actual or potential weekly benefit rate provided by the MESA. Not a single one of the 486 claimants in the instant case fulfilled the requirements of the 1974 amendment either before or after June 9, 1974.

Nevertheless, the MESC determined that the interim employment of the 486 claimants operated to terminate the labor dispute disqualification in each case, that each of the 486 claimants was

---

claimants included unloading a box car for a few hours for a total wage of $23.50, stacking carpet for one day, unloading paneling for a total earning of $16.50, and working for $2.00 per hour for one day at a club at which the claimant was a member.

[6] 1974 PA 104.

entitled to unemployment benefits, and that corresponding charges should be placed against Dow's rating account. Dow unsuccessfully challenged each claim by appealing to the MESC Board of Review. The 486 cases were then consolidated in an appeal by Dow in the Midland Circuit Court, which affirmed the board's decision, and its decision was thereafter affirmed by the Court of Appeals sub nom *Dow Chemical Co v Curtis,* 158 Mich App 347; 404 NW2d 737 (1987).

The MESC and the courts below refused to apply the 1974 amendment retrospectively. The Court of Appeals stated:

> The June 9, 1974, amendment to the statute added a higher standard that a claimant must satisfy in order to terminate the labor dispute disqualification. . . . Applying 1974 PA 104 retroactively to claimants who undertook interim employment prior to June 9, 1974, and who could have shown a termination of the labor dispute disqualification under then-existing 1974 PA 11, would have the effect of diminishing their rights to unemployment benefits. Consequently, the general rule in favor of giving retroactive application to remedial statutes is not applicable. Only a clear statement of legislative intent should justify giving retroactive application to this statute. [*Id.,* pp 357-358.]

Refusing also to apply the amendment to determine benefit eligibility for the weeks after June 9, 1974, the Court of Appeals stated:

> Finally, Dow contends that, since eligibility must be determined weekly, MESC erred as a matter of law in failing to redetermine each claimant's eligibility for the weeks commencing June 9, 1974, the effective date of the statutory amendment. Again, we disagree. [*Id.,* p 359.]

On appeal in this Court, Dow again argues that the amendment should be applied to the 486 claims, and that the MESC and the courts below erred as a matter of law in holding to the contrary. Dow maintains that because none of the 486 claimants met the criteria set forth in the 1974 amendment, they were ineligible for any unemployment benefits. In the alternative, Dow argues that the 1974 amendment should determine benefit eligibility for the weeks following its effective date, June 9, 1974.

Unemployment benefits already paid to these claimants cannot now be reclaimed because of a statutory bar. MCL 421.62(a); MSA 17.566(a). However, our decision will determine whether, and to what extent, Dow's rating account should be charged, pursuant to § 20(a) of the MESA,[7] with approximately $1,500,000 paid out for the 486 claims, a charge that imposes a continuing burden on Dow's account.

For reasons set forth below, we conclude that 1974 PA 104 governs eligibility with respect to benefit weeks after June 9, 1974, its effective date.[8]

---

[7] MCL 421.20(a); MSA 17.521(a).

[8] The effective date of the amendment is explained in another portion of the act:

(1) If this 1974 amendatory act is given immediate effect, the effective date of this amendatory act shall be the first day of the calendar week containing the thirtieth day after it is approved by the governor or becomes law without his approval.

(2) An individual who has a current and unexhausted benefit year on the effective date as provided in subsection (1) shall have his weekly benefit rate and the maximum amount of benefits recomputed in accordance with this amendatory act with respect to any week of unemployment beginning on or after that date on that portion of his benefit rights not exhausted prior to that date but his weekly benefit rate and maximum amount of benefits established and not exhausted prior to the aforementioned effective date shall not be subject to reduction or elimination by the recomputation. [MCL 421.66; MSA 17.569(16).]

## II

1974 PA 104 was enacted to restore the viability of the § 29(8) labor dispute disqualification in the wake of this Court's interpretation of that section in the context of a 1959 strike. In *Great Lakes Steel Corp v Employment Security Comm,* 381 Mich 249; 161 NW2d 14 (1968), employees of Great Lakes Steel were involved in a lengthy strike. Some of the employees obtained interim employment during the strike with other employers, from which they were laid off after having worked only "a few days to several weeks." *Id.,* p 251.

The *Great Lakes* Court interpreted then § 29 to mean that interim employment of even a very short duration was sufficient to terminate the labor dispute disqualification. The Court held that the only standard to be applied with regard to such interim employment was that the claimants be "employees" of "interim employing units." *Great Lakes, supra,* p 254. As indicated by the collection of cases annotated in 61 ALR3d 766,[9] the majority of jurisdictions, even in the absence of statutory criteria, have insisted that a labor dispute disqualification is not terminated unless the new employment is undertaken in good faith and the former employment is severed. See, e.g., *Mark Hopkins, Inc v California Employment Comm,* 24 Cal 2d 744, 748-749; 151 P2d 229 (1944). The rationale for imposition of such standards is obvious:

To do otherwise would open the door to unlim-

---

The MESC determined the effective date of 1974 PA 104 to be June 9, 1974.

[9] See anno: *Unemployment compensation: Labor dispute disqualification as applicable to striking employee who is laid off subsequent employment during strike period,* 61 ALR3d 766.

ited abuse. It would permit a striker to obtain any sort of temporary work and when it was terminated to apply for benefits for the loss of the temporary job even though the work stoppage [against the struck employer] still continued. [*Alin v Alaska Employment Security Comm,* 17 Alas 607, 615 (1958).]

As the instant case well demonstrates, failure by the *Great Lakes* Court to interpret § 29 so as to require "bona fide" employment opened the door to artful dodging of the labor dispute disqualification. The MESC itself recognized this deficiency and urged adoption of criteria to measure the nature and extent of services required to terminate the labor dispute disqualification.[10] Thereafter, the Legislature enacted 1974 PA 104 which amended

---

[10] Commentary submitted by the MESC to the Legislature in connection with SB 741, 1974 PA 104, dated March 15, 1974, included the following:

"In *Great Lakes Steel Corporation v Michigan Employment Security Commission* (1968), 381 Mich 249, the Supreme Court of Michigan held that a claimant shall be deemed to have terminated a labor dispute disqualification imposed under Section 29(8) by performing services subsequent to the beginning of the labor dispute in employment for remuneration with an employer.

"The Court however made no finding as to what amount of remuneration must be received by the claimant in order to terminate the labor dispute disqualification. However, it appears that in the *Great Lakes Steel* case that all of the individuals worked with the interim employees [sic] from several days to several weeks and that the amount of remuneration that the individuals received was at least equal to the amount that would have been the individual's benefit rate in such week of interim employment if he had been eligible and qualified in all respects.

"It is therefore recommended that Section 29(8) be amended to provide that a labor dispute disqualification be terminated if an individual performs services in employment with an employer in at least two consecutive weeks falling wholly within the period of his total or partial unemployment due to the labor dispute and if in addition he earns wages in each of such weeks in an amount equal to or in excess of his actual or potential weekly benefit rate with respect to such weeks based on [sic] his employment with the employer involved in the labor dispute."

§ 29(8) to supply objective criteria for evaluating the substantiality of "interim employment."

In the absence of any clear indication from the Legislature that retrospective operation was intended, and for reasons set forth below, we conclude that the MESC properly charged Dow's rating account for benefits paid to these employees with respect to benefit weeks prior to the effective date of the amendment. We also hold that 1974 PA 104 precludes any charge against Dow's rating account for benefits paid to these employees with respect to benefit weeks after the effective date of the amendment.

MCL 421.32(d); MSA 17.534(d), provides:

> The issuance of each benefit check shall be considered a determination by the commission that the claimant receiving the checking [sic] was covered during the compensable period, and *eligible and qualified* for benefits. [Emphasis supplied.]

Section 32(d) authorizes employers to request "a redetermination as to the eligibility or qualification as to that period and a determination as to later weeks and benefits still unpaid as are affected by the protest." Upon receipt of the challenge to benefits, the MESC

> shall investigate and redetermine whether the claimant is eligible and qualified as to that period. If, upon the redetermination, the claimant is found ineligible or not qualified, the commission shall investigate and determine whether the claimant obtained benefits, for 1 or more preceding weeks within the series of consecutive weeks which includes the week covered by the redetermination, improperly as the result of administrative error . . . .

Under § 32a(2), MCL 421.32a(2); MSA 17.534(1)(2), redetermination is authorized for any "good cause" shown. The MESC is required to review a timely protested "determination" and issue a "redetermination." MCL 421.32a(1); MSA 17.534(1)(1).

Unemployment benefits are a matter of statutory grace. MCL 421.57; MSA 17.561. The MESA is so structured that if the law changes or if facts change an interested party has the right to demand that eligibility or qualification, or both, be determined anew. See §§ 28, 29 and 32 of MESA; *Roman Cleanser Co v Murphy,* 386 Mich 698, 705; 194 NW2d 704 (1972); *Talley v Unemployment Compensation Div of Industrial Accident Bd,* 63 Idaho 644; 124 P2d 784 (1942). In the instant case, Dow, pursuant to § 32(d), timely protested the eligibility and qualification of each employee-claimant for each week of the strike. Although some filed claims for benefits on the basis of interim employment prior to June 9, 1974, and checks were issued prior to that date, the initial determinations did not constitute final adjudications of the rights to unemployment benefits. Claims made for benefit weeks after June 9, 1974, were controlled by the new criteria set forth in the amendment.

We conclude that 1974 PA 104 governs benefit eligibility for the benefit weeks following its effective date, and charges to Dow's rating account for benefits paid with respect to benefit weeks after June 9, 1974, are precluded in light of the fact that none of the employee-claimants met the new criteria for terminating the labor dispute disqualification.

Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the MESC for entry of an order consistent with this opinion.

Riley, C.J., and Levin and Brickley, JJ., concurred with Griffin, J.

Archer, J. (*concurring*). The plaintiff-appellant Dow Chemical Company seeks to eliminate charges to its mesc rating account for unemployment benefits paid to striking union workers during the course of a 1974 strike. These benefits were paid to claimants-appellees pursuant to a loophole[1] that existed in the labor dispute disqualification provision of the Michigan Employment Security Act, MCL 421.29(8); MSA 17.531(8), prior to its amendment by 1974 PA 104.[2]

I agree with the majority's conclusion that 1974 PA 104 operates prospectively and that it governs eligibility for the benefit weeks following its effective date despite claimants' termination of their

[1] At the time of the strike, § 29(8) provided as follows:

An individual shall be disqualified for benefits for any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by such labor dispute, in the establishment in which he is or was last employed, or to a labor dispute (other than a lockout) in active progress, or to shutdown or start-up operations caused by such labor dispute, in any other establishment within the United States which is functionally integrated with such establishment and is operated by the same employing unit. No individual shall be disqualified under this subsection 29(8) if he is not directly involved in such dispute.

[2] The amendment of § 29(8) added more stringent requirements for an employee to terminate a disqualification. The additional language reads as follows:

An individual's disqualification imposed or imposable under this subsection shall be terminated by his performing services in employment with an employer in at least 2 consecutive weeks falling wholly within the period of his total or partial unemployment due to the labor dispute, and in addition by earning wages in each of those weeks in an amount equal to or in excess of his actual or potential weekly benefit rate with respect to those weeks based on his employment with the employer involved in the labor dispute.

labor dispute disqualification for prior weeks on the basis of the statute as it existed before amendment. I write separately to emphasize that this result is mandated by the unique statutory scheme embodied in the MESA.

I

The relevant language of the MESA states that an employee is "disqualified [when he is on strike due to a labor dispute] in the establishment in which he is or was *last* employed . . . ." It is undisputed that the claimants had interim employment other than their employment with Dow. Therefore, these employees were not disqualified under the pre-amendment statute because they were not within the unambiguous statutory language disqualifying only those unemployed due to a labor dispute at their *last* place of employment. *Great Lakes Steel Corp v Employment Security Comm,* 381 Mich 249; 161 NW2d 14 (1968).

In *Great Lakes Steel,* this Court held that a disqualification under § 29(8) of the MESA could be terminated by interim employment of short duration. In the instant case, the courts below uniformly held that the *Great Lakes Steel* interpretation of § 29(8) was the controlling interpretation of the statute prior to its amendment by 1974 PA 104.[3] In addition, each of the courts below has held that the statute should be applied as it existed before the amendment because the 486 claimants filed prior to the effective date of the amendment. The judgment of this Court differs from that reached in the Court of Appeals only with respect to charges to the employer's rating account for

[3] In dicta, the majority criticizes the analysis and result in *Great Lakes Steel. Ante,* pp 480-482. In fact, the *Great Lakes Steel* Court reached the correct result on the basis of the statute as it existed prior to amendment by 1974 PA 104.

weeks following the effective date of the amendment.

II

The provision governing the effective date of 1974 PA 104 provides:

(1) If this 1974 amendatory act is given immediate effect, the effective date of this amendatory act shall be the first day of the calendar week containing the thirtieth day after it is approved by the governor or becomes law without his approval.

* * *

This act is ordered to take immediate effect.
Approved May 16, 1974. [1974 PA 104, MCL 421.66; MSA 17.569(16).][4]

There is no indication in this provision that the amendment is to be given retroactive effect. This Court has stated:

The pertinent rule of statutory construction used to determine the effect an amendatory act has on transactions and events completed prior to its enactment is set forth in 1A Sands, Sutherland Statutory Construction (4th ed), § 22.36, pp 300-301:

"In accordance with the rule applicable to original acts, it is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively. *Provisions added by the amendment that affect substantive rights will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment."* [Emphasis

4 The amendment took effect June 9, 1974.

added. *Hurd v Ford Motor Co*, 423 Mich 531, 535; 377 NW2d 300 (1985).]

Also, in *Franks v White Pine Copper Div*, 422 Mich 636; 375 NW2d 715 (1985), the Court addressed the question of retrospective application of statutory revisions, distinguishing between provisions affecting substantive rights, and those that are merely procedural or remedial in nature.

The Court stated:

"As a matter of statutory construction, statutes are presumed to operate prospectively unless the contrary intent is clearly manifested." [*Selk v Detroit Plastic Products*, 419 Mich 1, 9; 345 NW2d 184 (1984).] "A retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a disability with respect to transactions or considerations already past." [*Hughes v Judges' Retirement Bd*, 407 Mich 75, 85; 282 NW2d 160 (1979)].

"Although a statute is not regarded as operating retrospectively merely because it relates to an antecedent event, . . . application of the provisions of § 358 to impose a disability, in the form of a setoff, upon the amount of workers' compensation time periods prior to the effective date of the legislation in question, is purely retroactive. . . .

\* \* \*

An exception to the general rule is recognized where a statute is remedial or procedural in nature. *Hansen-Snyder Co v General Motors Corp*, 371 Mich 480; 124 NW2d 286 (1963). Thus, statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intention is manifested. . . .

. . . [T]he statute here in question may not be

regarded as wholly procedural in character. *Its effect, if applied, would result in taking from the plaintiff the substantive right to receipt of compensation payments which existed prior to enactment of § 358. Consequently, only a clear statement of legislative intent could justify retroactive application.*

Nor are we persuaded that § 358 should be applied retroactively because it can be characterized as "remedial." This Court has been reluctant to apply this exception without extensive exploration of legislative intent. . . . *We agree with the Court of Appeals that "[w]hile § 358 is 'remedial' in the sense that it was adopted to effect a reform which, in the eyes of many, will correct certain injustice in the system, [retroactive application would] also significantly and detrimentally affect the substantive right of certain injured employees to receipt of workers' compensation benefits."* [422 Mich 671-673, quoting *Franks v White Pine Copper Div*, 122 Mich App 177, 186; 332 NW2d 447 (1982). Emphasis added.]

The Court held that under the provisions of § 358 of 1980 PA 357, unemployment compensation benefits paid for weekly periods before the effective date of the statutory amendment were not deductible from workers' compensation benefits payable for the identical weekly periods. Only those benefits payable *after* the effective date of the statute were to be reduced by unemployment compensation paid or payable for the same periods.

In the instant case, we are faced with considerations similar to those addressed by the Court in *Franks v White Pine Copper Div.* The statute in this case cannot easily be characterized as a purely remedial statute. The substantive rights of workers to receive unemployment benefits following requalification are affected by the statutory amendment. Therefore, according to the rationale

in *Franks v White Pine Copper Div, supra,* 1974 PA 104 may operate only prospectively.

## III

The Court of Appeals determined that 1974 PA 104 could not be applied to benefits in weeks after the effective date of the amendment because "[t]he events or circumstances which triggered the termination of the claimants' disqualification under § 29(8) were their employment, prior to June 9, 1974, by employers other than the employer involved in the labor dispute."[5] It found the disqualification inquiry distinguishable from the issue of eligibility under § 28(1) of the MESA. The Court reasoned that eligibility is determined on a week-to-week basis, whereas labor dispute disqualification or termination of such disqualification is a one-time event.

I agree with the majority that 1974 PA 104 must be applied to weeks after June 9, 1974. The relevant issue is the timing of the accrual of an employee's right to unemployment benefits for a particular week on the basis of eligibility and qualification. That issue is governed by MESA.

> The issuance of each benefit check shall be considered a determination by the commission that the claimant receiving the checking [sic] was covered during the compensable period, and eligible and qualified for benefits. [MCL 421.32(d); MSA 17.534(d).]

This section also authorizes employers to request a redetermination as to eligibility or qualification.

---

[5] 158 Mich App 347, 359; 404 NW2d 737 (1987).

Upon receipt of a protest or request, the commission

> shall investigate and redetermine whether the claimant is eligible and qualified as to that period. If, upon the redetermination, the claimant is found ineligible or not qualified, the commission shall investigate and determine whether the claimant obtained benefits, for 1 or more preceding weeks within the series of consecutive weeks which includes the week covered by the redetermination, improperly as the result of administrative error . . . . [*Id.*]

Under MCL 421.32a(1); MSA 17.534(1)(1), the commission is required to review a timely protested "determination" and issue a "redetermination." Thus, the Court of Appeals erred when it held that no prospective redetermination of qualification or disqualification could occur where such qualification or disqualification took place prior to the effective date of the amendment. The quoted provisions clearly indicate that the Legislature intended that claimants be eligible and qualified for benefits in each week for which they received them.

### CONCLUSION

On the basis of statutory and case law existing prior to the effective date of 1974 PA 104, I find that Dow Chemical Company's striking employees had properly terminated their disqualification by obtaining interim employment. Accordingly, the MESC is entitled to charge Dow Chemical Company's rating account for charges corresponding to benefits paid prior to the effective date of the amendment. However, 1974 PA 104 is correctly applied to preclude charges to Dow's MESC rating account for benefits paid to striking workers after the effective date of the amendment.

CAVANAGH, J. (*dissenting*). We are asked to de-

termine the extent to which an amendment of the labor dispute disqualification provision of the Michigan Employment Security Act[1] contained in 1974 PA 104 applies to the 486 claims at issue in this appeal. Implicit in the majority opinion is the conclusion that the amendment is substantive and ought to be applied prospectively. I write separately to express my disagreement with the majority's conclusion that the claimants' eligibility may be redetermined for benefit weeks subsequent to the effective date of the amendment.

I

During a labor dispute with Dow Chemical Company, 486 striking workers performed short-term employment in order to terminate their disqualification for unemployment benefits under the labor dispute disqualification provision of MCL 421.29; MSA 17.531. The claimants then applied for and were awarded unemployment compensation benefits.

Dow appealed these awards to an MESC referee and then to the Employment Security Board of Review but was unsuccessful. Dow then filed a consolidated appeal in Midland Circuit Court, but the orders of the Board of Review were affirmed. The decision was also affirmed by the Court of Appeals. *Dow Chemical Co v Curtis*, 158 Mich App 347; 404 NW2d 737 (1987).

II

The labor dispute disqualification provision of

---

[1] MCL 421.1 *et seq.*; MSA 17.501 *et seq.*

§ 29(8) in effect at the time the present claimants sought unemployment benefits provided:

> An individual shall be disqualified for benefits for any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by such labor dispute, in the establishment in which he is or was last employed, or to a labor dispute (other than a lockout) in active progress, or to shutdown or start-up operations caused by such labor dispute, in any other establishment within the United States which is functionally integrated with such establishment and is operated by the same employing unit. No individual shall be disqualified under this subsection 29(8) if he is not directly involved in such dispute.

Under the terms of this provision as interpreted by this Court's decision in *Great Lakes Steel Corp v Employment Security Comm,* 381 Mich 249; 161 NW2d 14 (1968), the MESC and the courts below looked to the identity of each claimant's last employing unit to determine whether the unemployment was due to a labor dispute involving the last employer. The *Great Lakes* Court concluded that the labor dispute disqualification is terminated when a striking employee provides services for an interim employer from whom remuneration is received. *Id.,* 254.

The Legislature subsequently amended § 29(8) by 1974 PA 104 which raised the standards under which a striking employee may terminate the labor dispute disqualification. The amended version, which became effective on June 9, 1974, provides:

> An individual's disqualification imposed or imposable under this subsection shall be terminated by his performing services in employment with an employer in at least 2 consecutive weeks falling wholly within the period of his total or partial unemployment due to the labor dispute, and in

addition by earning wages in each of those weeks in an amount equal to or in excess of his actual or potential weekly benefit rate with respect to those weeks based on his employment with the employer involved in the labor dispute.

The majority notes that not a single claimant fulfilled the more stringent requirements of the amended statute either before or after June 9, 1974. It is undisputed, however, that all of the claimants involved in the present case terminated their disqualification prior to June 9, 1974, and became eligible for benefits under the terms of the preamendment version of the statute.

The precise question to be decided is whether an amended statute that affects substantive rights can be applied so as to extinguish a claimant's eligibility for benefits. I disagree with the majority's conclusion that one's initial eligibility for benefits may be redetermined for benefit weeks commencing on or after the effective date of the amendment. This result was not authorized by the Legislature and is not supported by principles of statutory construction or by prior precedent of this Court.

The Court's decision in *Franks v White Pine Copper Div,* 422 Mich 636, 670-672; 375 NW2d 715 (1985), outlines the guiding principles to be used when determining the extent to which a statutory change in the law is to be applied. Statutes are presumed to operate prospectively unless the Legislature has expressly provided for retrospective application. The initial inquiry, then, is whether the Legislature has clearly stated its intention on this question.

I agree with the majority that there is no specific language in 1974 PA 104 indicating that retrospective application was intended. Conse-

quently, although the majority has carefully avoided the use of the word "prospective," the amendment must be applied prospectively.

The majority holds that the amendatory act is not to be applied to benefits paid prior to the amendment's effective date. In this respect, the majority has provided for a prospective application. The majority does not, however, provide for a purely prospective application, since it authorizes the termination of the claimants' rights to benefits, rights which accrued prior to the effective date of the amendment.

The majority has criticized the *Great Lakes* decision and has heralded the Legislature's adoption of 1974 PA 104. A preference for the higher standards adopted by the Legislature is not, however, a substitute for the application of general principles of statutory construction and does not justify a departure from established precedent.

When determining the effect of an amendatory act on transactions completed prior to its enactment, we have previously looked to the rule set forth in 1A Sands, Sutherland Statutory Construction (4th ed), § 22.36, pp 300-301:

> In accordance with the rule applicable to original acts, it is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively. Provisions added by the amendment that affect substantive rights will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment.[2]

---

2 See *Hurd v Ford Motor Co,* 423 Mich 531, 535; 377 NW2d 300 (1985); *White v General Motors Corp,* 431 Mich 387; 429 NW2d 576 (1988).

In *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985), we determined that an amendment of the Workers' Disability Compensation Act[3] which was enacted by the Legislature to invalidate this Court's decision in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978), effected a substantive change in the law. Because there was no indication of the Legislature's intent, we concluded that the provision was entitled to prospective application. The section was held to apply only to personal injuries occurring on or after the provision's effective date. *Hurd, supra,* 535.

More recently, in *White v General Motors Corp,* 431 Mich 387; 429 NW2d 576 (1988), this Court provided for a prospective application of § 373 of the WDCA[4] which imposed a higher standard of disability for those receiving nondisability pension or retirement benefits. Once again, the higher standard contained in the amendment was applied prospectively to injuries occurring on or after the effective date of the provision.

In the workers' compensation context, then, amendatory acts affecting questions of eligibility have been applied prospectively so as to apply to injury dates occurring on or after the effective date of the provision. *Hurd, White, supra.* Thus, an injured worker's right to benefits accrues on the date of injury, and the law in effect at the time of the work-related injury is controlling. An amendatory act entitled to prospective application in an unemployment compensation case should be applied to claims on the basis of unemployment dates on or after the effective date chosen by the Legislature, since it is the claimants' unemployment that

---

[3] MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

[4] MCL 418.373; MSA 17.237(373) as amended by 1980 PA 357, effective January 1, 1982.

gives rise to their right to receive benefits.[5] In the present case, then, because the striking workers successfully terminated their disqualification for unemployment benefits by performing interim employment, their right to the benefits accrued prior to the effective date of the amendment, and their initial eligibility for benefits may not be redetermined.[6]

The majority suggests that the MESA authorizes a redetermination of the present claimants' eligibility for benefit weeks following the effective date of 1974 PA 104. I disagree. Section 32(d) of the MESA[7] provides in part:

> The issuance of each benefit check shall be considered a determination by the commission that the claimant receiving the checking [sic] was covered during the compensable period, and eligible and qualified for benefits.

This section was explained in *Roman Cleanser*

---

[5] The Court of Appeals stated in *Jozwik v Employment Security Comm*, 30 Mich App 506, 520; 186 NW2d 755 (1971), that

"the primary mandatory prerequisite in any instance, the key that unlocks the floodgates, is the existence of a state of unemployment. If no unemployment, then no benefits could arise, in any event, regardless of qualifications or eligibility. Unemployment is the indispensable, essential element or ingredient which brings into being and sets into motion all of the other provisions of the act. The operation of the act is dependent entirely upon the existence of a status of unemployment as it is defined in the act." [Emphasis omitted.]

[6] The *Great Lakes* Court expressly rejected the employer's claim that the striking workers were not "unemployed" as that term is defined in § 48 of the act. The Court explained that the interim employer became the last employing unit under the labor dispute disqualification provision then in effect when the striking worker obtained employment with that employer. The interim employer also became the "employing unit" under § 48, and the claimants became eligible for benefits because of layoffs by their interim employers. 381 Mich 253-255.

[7] MCL 421.32(d); MSA 17.534(d).

*Co v Murphy,* 386 Mich 698, 705; 194 NW2d 704 (1972), in which this Court stated:

"Under § 32(d), the issuance of each benefit check is a determination entitling the employer to a redetermination of the former employee's current eligibility and qualification. A redetermination may, thus, be obtained at any time upon a claim that there has been a change of facts or of law. But, absent a change of facts or of law, questions already decided may not be reopened unless 'for good cause' the commission 'reconsiders' under § 32a."

Neither the *Roman Cleanser* decision nor § 32(d) of the act compels the conclusion reached by the majority. If the Legislature had expressly provided for a retroactive application of its amendatory act, § 32 would provide the procedure under which an employer could seek a redetermination of the claimants' eligibility. The Legislature chose not to do so in this instance.

The majority of this Court has determined the application of 1974 PA 104 by looking to the extent to which the employer will be burdened by charges against its rating account. The purpose of the MESA, however, is not advanced when the appropriate application of amendatory acts is determined by looking to the financial effects on an employer.[8] Indeed, our function is much more

[8] The Legislature expressly declared the policy of the MESA in MCL 421.2; MSA 17.502, which states:

The legislature acting in the exercise of the police power of the state declares that the public policy of the state is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his

narrow, and, absent some indication of legislative intent, a decision to apply a substantive amendment so as to take away accrued rights would represent an intrusion into the Legislature's authority to determine questions of policy that govern this area of the law.[9]

I find no indication in the statute or in the provision governing its effective date[10] that the

family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state.

As we stated in *General Motors Corp v Erves (On Rehearing)*, 399 Mich 241, 251; 249 NW2d 41 (1976), modified 400 Mich 953 (1977), "[t]he costs involved are considered part of the cost of doing business and are reflected primarily in the price of the product to the consumer."

[9] See *Lawrence Baking Co v Unemployment Compensation Comm*, 308 Mich 198, 212; 13 NW2d 260 (1944); *General Motors Corp v Unemployment Compensation Comm*, 321 Mich 724, 728; 34 NW2d 497 (1948).

[10] The effective date of the provision is governed by MCL 421.66; MSA 17.569(16), which provides in part:

(1) If this 1974 amendatory act is given immediate effect, the effective date of this amendatory act shall be the first day of the calendar week containing the thirtieth day after it is approved by the governor or becomes law without his approval.

(2) An individual who has a current and unexhausted benefit year on the effective date as provided in subsection (1) shall have his weekly benefit rate and the maximum amount of benefits recomputed in accordance with this amendatory act with respect to any week of unemployment beginning on or after that date on that portion of his benefit rights not exhausted prior to that date but his weekly benefit rate and maximum amount of benefits established and not exhausted prior to the aforementioned effective date shall not be subject to reduction or elimination by the recomputation.

The amendment took effect on June 9, 1974.

Legislature intended to require a claimant to terminate the labor dispute disqualification by locating suitable interim employment on more than one occasion. Once a claimant has established his eligibility for benefits under this provision, a subsequent amendatory act determined to be substantive and entitled to prospective application should not be applied so as to require the claimant to terminate his disqualification once again. Thus, the Court of Appeals correctly determined that a claimant who has been determined to be eligible for benefits under § 29(8) remains eligible and qualified for any week in which the claimant

> (1) is registered for work, has continued to report to the unemployment office as prescribed by the commission, and is seeking work, unless this requirement is waived by the commission, (2) makes a claim for benefits, and (3) is able and available to perform suitable full-time work of a character for which he is qualified. [158 Mich App 359.]

III

Consequently, I would hold that, as in workers' compensation cases where an employee's right to benefits accrues on the date of injury, an employee's right to unemployment compensation benefits accrues on the date of unemployment. When determining a claimant's eligibility for benefits, the applicable law is the law in effect on the date of unemployment, not the law in effect on the date each benefit check becomes due and payable. I would affirm the decision of the Court of Appeals upholding the award of benefits by the MESC.

BOYLE, J., concurred with CAVANAGH, J.

BOYLE, J. (*dissenting*). I agree with the observations and conclusions of Justice CAVANAGH. I, too, am concerned with the inconsistencies between this majority and the majorities in *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985), and *White v General Motors Corp,* 431 Mich 387; 429 NW2d 576 (1988). Moreover, I believe that the question of the appropriate accrual date in unemployment compensation must be addressed— whether explicitly or inexplicitly—in this case. The very words "retroactive" and "prospective" are inherently relative. It follows that the use of these words has no value in determining the application of a statutory amendment unless a point of reference is designated. The majority's unreflected quotation of § 32 of the act provides no assistance in determining the correct accrual date for the rights of claimants, since it merely allows redeterminations of eligibility and qualification. The question begged by the majority is the following: What law is applicable in the determination or redetermination of eligibility and qualification? I would answer, as has Justice CAVANAGH, that the applicable law is presumed to be the law in effect on the date of unemployment.[1]

I agree with Justice CAVANAGH that the Employment Security Act is analogous in this respect to the law of workers' compensation where the accrual date has long been held to be the date of injury. *Hurd, supra.* See also Welch, Workers' Compensation in Michigan: Law & Practice, §§ 2.01-2.04. I would add that this conclusion flows from the nature of the statute in question. Unem-

---

[1] This is not to say that the Legislature is without power to enact retrospective amendments, see MCL 421.57; MSA 17.561, but only that the applicable law is presumed to be that in effect at the date of unemployment unless otherwise specified. However, the majority does not suggest that the section of 1974 PA 104 in question is expressly retroactive.

ployment compensation, like workers' compensation, is essentially an insurance scheme. As we are reminded by § 2 of the act, this scheme functions through "[t]he systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed . . . ." MCL 421.2; MSA 17.502. Contributions to these accumulated funds are based upon actuarial studies conducted by the commission at the direction of the advisory council. See MCL 421.3a; MSA 17.503(1). If benefit levels ordinarily fluctuate on the basis of changes in the law after the date of unemployment, after the accumulation of funds, this legislation is in peril. No insurance scheme can long survive if the adjustment of claims is based merely upon post hoc notions of sound public policy.

This concept has not eluded the Legislature. The history of the act shows a consistent assumption on the part of the Legislature that the applicable law is presumed to be that in effect on the date of unemployment.

Section 66(1) of 1974 PA 104, MCL 421.66(1); MSA 17.569(16)(1),[2] provides as a general rule that the effective date of the amendment is immediate, or more precisely, the first day of the calendar week containing the thirtieth day after it became law.[3] The effective date is not, of course, the ac-

---

[2] While only 1974 PA 104, § 66 is used to demonstrate the proper accrual date in this opinion, this legislation is by no means unique. See 1975 PA 110, § 67, MCL 421.67; MSA 17.569(17).

[3] 1974 PA 104, § 66(1) provides:

If this 1974 amendatory act is given immediate effect, the effective date of this amendatory act shall be the first day of the calendar week containing the thirtieth day after it is approved by the governor or becomes law without his approval.

The act was approved by the Governor on May 16, 1974.

crual date. As was recently explained in *White:*

> "Effective dates are inserted by the Legislature in all kinds of statutes. When it wishes to address the question of retroactivity, the Legislature has specifically done so in addition to providing for an effective date.
>
> "For example, when the Legislature passed the new rule for a claim and delivery action, in 1976 PA 79, it provided in enactment § 2 that '[t]his amendatory act shall apply to all actions pending or commenced on or after the effective date of this act.' Enactment § 3 of the same statute provided: 'This amendatory act shall take effect July 1, 1975.' Because the Legislature in connection with other statutes in enactment sections has specifically addressed retroactivity in addition to providing an effective date, we are unable to agree that the mere insertion of an effective date, standing alone, is dispositive of the prospective/retroactive effect of 1981 PA 194." [*White, supra,* 398-399 (RILEY, C.J.), quoting with approval, *Selk v Detroit Plastic Products,* 419 Mich 1, 35, n 2; 345 NW2d 184 (1984).]

To be more specific, the use of an "effective date" in any legislation merely serves to negate the presumption under Const 1963, art 4, § 27 which would otherwise provide an effective date ninety days after the end of the legislative session. What is of more significance in determining questions of retrospective or prospective application is the use of the phrase "shall apply."

This phrase can also be found in 1974 PA 104, § 66(4):

> Notwithstanding subsection (1), the provisions of sections 17(c)(iii) and 27(j), in effect prior to this amendatory act, *shall apply* until January 1, 1975. [MCL 421.66(4); MSA 17.569(16)(4). Emphasis added.]

By implication, the new act, 1974 PA 104, applies to all claims after that date. Thus, the applicable law for all claims regarding § 17(c)(iii) and 27(j) after January 1, 1975 is 1974 PA 104, *regardless of the accrual date.*

Further exploration of § 66(4) reveals why the Legislature would prefer that these provisions be applied as of January 1, 1975, to ongoing claims or assessments. Section 17(c)(iii) of the prior act, 1971 PA 231, provided that "the solvency account shall be credited . . . with all reimbursements and benefits paid under subsection (c) of Section 11 . . . ." In turn, 1971 PA 231, § 11(c) authorized the commission to enter reciprocity agreements with other states for the exchange of accumulated benefits. Among other changes, 1974 PA 104, § 11(g) allows reciprocity agreements only if the commission finds the agreement to "be fair and reasonable as to all affected interests." In this respect, 1974 PA 104, § 11(g) does not affect substantive rights but does change procedure for distribution of benefits. Since the amendment, in this respect, is procedural and not substantive, it is presumed to apply retroactively. *White, supra,* 397-398. That result might, however, conflict with prior reciprocity agreements entered by the commission. It was therefore necessary for the Legislature to give this provision limited prospective application, and that was accomplished by way of the "shall apply" language of 1974 PA 104, § 66(4). If, on the other hand, the Legislature had preferred an accrual date corresponding with the date of each benefit payment, it would have been unnecessary to make § 17(c)(iii) applicable as of January 1, 1975, since the effective date of § 11(g) was January 1, 1975, under 1974 PA 104, § 66(3).

The Legislature's presumption of an unemployment accrual date is further demonstrated by

examining § 27(j) of the prior act, 1971 PA 231. As I have previously noted, § 27(j) of the prior act also remained applicable until January 1, 1975, under 1974 PA 104, § 66(4). Section 27(j) of the prior act was, however, a *substantive* provision restricting the rights of certain employees of institutions of higher education to benefits between academic years or terms within an academic year. The 1974 amendment extended the restrictions to certain employees of primary and secondary institutions, if notified of the layoff seven days prior to the end of the term. See 1974 PA 104, § 27(i). Since 1974 PA 104 had an effective date of June, 1974, some employees laid off after that date would have been affected by the amendment and, of course, it would have been impossible for employers to comply, in the same cases, with the seven-day notice requirement. It was therefore necessary to phase-in this legislation at the close of the following term, which corresponded with the end of the calendar year, 1974. Again, the applicable law language of 1974 PA 104, § 66(4) was used to override the presumption of prospective application based upon the date of the unemployment. If, as the majority assumes, the accrual date of substantive rights under the act is the date of each payment, it would have been unnecessary to extend the applicability of 1971 PA 231, § 27(j), since the new provisions of the 1974 amendment, 1974 PA 104, § 27(i), are expressly made effective January 1, 1975, in 1974 PA 104, § 66(3).[4]

This examination of 1974 PA 104, § 66 demonstrates two important matters of legislative intent. First, consistent with the insurance nature of the

[4] The majority's treatment of 1974 PA 104, § 66(4) renders the entire paragraph nugatory, contrary to the general rule of statutory interpretation. *State Bar of Michigan v Galloway*, 422 Mich 188, 196; 369 NW2d 839 (1985).

scheme, ordinary rules of statutory interpretation and this Court's own prior decisions, the Legislature presumes that substantive rights under the act accrue as of the date of unemployment, while procedural provisions are fully retroactive. Second, and most germane to this litigation, the Legislature chose to expressly override these presumptions as to §§ 17(c)(iii) and 27(j). Both common sense and the doctrine of *expressio unius est exclusio alterius, Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971),[5] thus indicate that the Legislature chose not to override these presumptions as to § 29(8) of the same amendment. Therefore, in accordance with our prior decisions in *White, Hurd,* and *Selk, supra,* the substantive amendment of § 29(8) should be given only prospective application based upon an accrual date corresponding with the date of unemployment for these employees.

I respectfully dissent.

[5] See also 2A Sands, Sutherland Statutory Construction, § 47.23, p 194.