MICHIGAN MUTUAL INSURANCE COMPANY v AMERICAN
COMMUNITY MUTUAL INSURANCE COMPANY

Docket Nos. 92599, 94188. Submitted August 20, 1987, at Grand
Rapids. Decided December 21, 1987. Leave to appeal applied
for.

Michigan Mutual Insurance Company, a no-fault insurer, brought
separate actions in Wayne Circuit Court and Oakland Circuit
Court against American Community Mutual Insurance Com-
pany, a group health and disability insurer. Several other no-
fault insurers joined Michigan Mutual as plaintiffs in the
action in Wayne Circuit Court. In both actions, plaintiffs sought
reimbursement for their payment of medical expenses incurred
by their respective insureds as a result of injuries sustained in
automobile accidents. All the individuals insured by plaintiffs
in these cases had elected to coordinate no-fault personal injury
protection benefits with their health and disability insurance.
Plaintiffs also sought declarations that provisions in defen-
dant's policies limiting defendant's liability to $300 for acciden-
tal bodily injury arising out of automobile accidents where
benefits are provided under insurance policies other than defen-
dant's are invalid pursuant to *Federal Kemper Ins Co, Inc v
Health Ins Administration, Inc,* 424 Mich 537 (1986), where the
Supreme Court held that a health insurer was primarily liable
in a case involving conflicting "other insurance" provisions in
the policies of the plaintiff no-fault insurer and the defendant
health insurer. Both the Wayne Circuit Court, Helene N.
White, J., and the Oakland Circuit Court, Frederick C. Ziem, J.,
entered orders granting summary disposition in favor of plain-
tiffs, from which defendant appealed. The appeals were consoli-
dated by the Court of Appeals.

The Court of Appeals *held:*

Defendant is primarily liable for payment of the insureds'
medical expenses. Enforcement of defendant's "other insur-

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340-347.
Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from independent collateral sources. 10 ALR4th 996.

ance" provisions which limit its liability to a de minimis amount would contravene the public policies articulated in *Federal Kemper* by enabling defendant to circumvent primary liability, shifting it to plaintiffs through a reduction of otherwise available benefits.

Affirmed.

Insurance — No-Fault — Personal Injury Protection Benefits — Coordination of Benefits.

A health insurance carrier is primarily liable for payment of an insured's medical expenses resulting from injuries suffered in an automobile accident, and may not limit its liability to a de minimus amount, where the insured elected to coordinate no-fault personal injury protection benefits with health insurance (MCL 500.3109a; MSA 24.13109[1]).

*Barris, Sott, Denn & Driker* (by *Stephen E. Glazek* and *Morley Witus*), for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich* and *Kevin J. Moody*), for defendant.

Before: MacKenzie, P.J., and Doctoroff and J. C. Kingsley,* JJ.

Doctoroff, J. Defendant appeals as of right from orders granting plaintiffs' motions for summary disposition pursuant to MCR 2.116(C)(9) and (10) on the basis that the insurance contract clauses at issue were governed by *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986). We affirm.

These consolidated cases involve plaintiffs' no-fault automobile insurance policies as well as defendant's group and individual disability insurance policies. These policies were issued to individuals who subsequently incurred medical expenses as a result of automobile accidents.

Plaintiffs' no-fault policies contain coordination of benefits clauses which provide that when an

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

insured also has hospital and accident insurance, the no-fault insurance policy will pay benefits only when the expense is not covered by the other insurance policies.

Defendant's disability insurance policies include language limiting its liability. Two of the group policies contain clauses which provide:

EXCEPTIONS:

CONDITIONS NOT COVERED: The policy does not cover hospital confinement or surgical expense for convalescent care, rest cure, diagnostic purposes, unless otherwise provided herein, or solely for the extraction of teeth or other dental treatment, or for any attempt at suicide or self-destruction under the Hospitalization, Surgical, Medical, Diagnostic x-ray, and Supplemental Accident. The Company shall not be liable for hospital confinement or surgical expense due to injuries or sickness wholly or partially covered by Workmen's Compensation or Occupational Disease Laws, or where the employer is liable, or while engaged in military or naval service, or for hospital confinement or surgical expense for veterans in marine or other Federal hospitals, nor for injuries or diseases for which hospitalization or surgery is available without cost under laws enacted by the State Legislature or the Congress of the United States. *The Company shall not be liable for any loss caused by accidental bodily injury which arises out of or results from an automobile accident when benefits are provided under the Michigan No-Fault Insurance Act* (Act No. 294 of the Public Acts 1972) *including any amendments thereto, exceeding three hundred dollars ($300) for any one insured person as a result of any Automobile Accident.* [Emphasis added.]

One of the group policies contains a clause which provides:

DEFINITION OF EXCLUDED CHARGES

The following "Excluded Charges" are specifically excluded from coverage:

All Charges which are not specifically included in the definition of eligible charges for personal insurance and in addition any charges:

* * *

(1) *for any loss caused by* accidental bodily injury which arises out of or results from *an automobile accident* when benefits are provided under the Michigan No-Fault Insurance Act (Act No. 294 of the Public acts of 1972) including any amendments thereto, *exceeding three hundred dollars ($300)* for any one insured person as a result of any Automobile Accident. [Emphasis added.]

The following clause appeared in the individual insurance policy issued by defendant:

Deductible Amount. The *"Deductible Amount"* applicable to expenses incurred as a result of Covered Injuries, or Covered Sicknesses *is the greater of (a) the amount of benefits provided by Other Insurance Coverage* as a result of such injury or sickness or (b) the Minimum Deductible Amount specified in the Policy Schedule.

* * *

Other Insurance Coverage. "Other Insurance Coverage," as used herein, *shall mean coverage provided for hospital, surgical or other medical expenses by any other insurance* or welfare plan or prepayment arrangement, whether or not written on an excess basis, including Blue Cross or Blue Shield plans, *and automobile medical payments plans,* whether provided on an individual or family basis or on a group basis through an employer, union or membership in an association. If such coverage is on a provision of service basis rather than an indemnity basis, the amount of benefits provided thereby shall be deemed to be the regular and customary charges for the services rendered. [Emphasis added.]

In granting plaintiffs' motions, the trial courts applied *Federal Kemper,* invalidated defendant's clauses providing for the $300 limitation, and ordered it to pay all of its insureds' medical bills to the extent that they were covered under the policies it issued.

Defendant now argues that the trial courts erred by applying *Federal Kemper* to this case. Defendant first posits that its health insurance clause does not constitute an "other insurance" clause within the meaning of *Federal Kemper.* It further asserts that the clauses at issue do not conflict with those of plaintiffs because they do not deny defendant's primary liability but rather only seek to limit the amount of benefits defendant must pay as the primary insurer to $300. We disagree and find *Federal Kemper* dispositive of this case.

In *Federal Kemper,* the insurance policies issued by both the defendant health insurer and the plaintiff no-fault insurer contained conflicting "other insurance" provisions which were "excess" clauses wherein each insurer disclaimed primary liability. As set forth in that case, the term "other insurance" provision can apply to one of three basic types of clauses:

> Many insurance policies contain language intended to restrict or escape liability for a particular risk in the event that there is other insurance. Such "other insurance" provisions are of three basic types: "pro rata," "escape," and "excess." A "pro rata" clause purports to limit the insurer's liability to a proportionate percentage of all insurance covering the insured event, while an "escape" or "no liability" clause provides that there shall be no liability if the risk is covered by other insurance, and an "excess" clause limits liability to the amount of loss in excess of the coverage provided by other insurance. [424 Mich 542.]

In resolving the conflict between the insurance clauses, the Supreme Court examined the legislative history of § 3109a of the no-fault act, which mandates that no-fault carriers offer coordination of benefits at reduced premiums when an insured has other health and accident coverage. MCL 500.3109a; MSA 24.13109(1).[1] It then concluded that the defendant health insurer's "other insurance" provision was to be given no effect and found the health insurer primarily liable for payment of its insured's medical expenses that were incurred as a result of an automobile accident. The Court determined that giving effect to plaintiff no-fault insurer's coordinated benefits provision furthered the purposes of § 3109a to contain both auto insurance costs and health care costs while eliminating duplicative recovery.[2]

We are persuaded that defendant's clauses are modified versions of an "escape" clause, for they enable defendant to restrict or escape liability after payment of $300. They therefore fall into the category of an "other insurance" provision.

Defendant's argument that it does not deny primary liability as the *Federal Kemper* insurers did misperceives the meaning of the word "primary" as used in that case. While it asserts that *Federal Kemper* was concerned with order of priority, it is clear from that case that "primary" was

---

[1] MCL 500.3109a; MSA 24.13109(1) provides:

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

[2] 424 Mich 551.

intended to mean "principal" or "first in impor-
tance" and did not denote "first in time" or refer
to temporal priority.[3] Within that context, defen-
dant does not accept "primary" liability for pay-
ment of its insureds' medical expenses from auto
accidents where no-fault insurance is available,
but has instead carved out from its ordinary cover-
age a $300 limitation applicable to those situa-
tions.

In this case, enforcement of defendant's "other
insurance" provisions which limit its liability to a
de minimis amount would contravene the policies
articulated in *Federal Kemper* by enabling the
health insurer to circumvent primary liability,
shifting it to the no-fault insurer through a reduc-
tion of otherwise available benefits. We decline to
enforce this provision, and conclude that defen-
dant health insurer is primarily liable for pay-
ment of the insureds' medical bills.

Defendant next asserts as a basis for distinguish-
ing the clauses in *Federal Kemper* that, if its own
clauses are not enforced, it will be required to
make full duplicate payments in contravention of
both public policy and the terms of the parties'
contracts. It contends that, because another provi-
sion, MCL 500.3109(3); MSA 24.13109(3),[4] enables

---

[3] We note that the position that the *Federal Kemper* decision was
not concerned with the order of payment draws further support from
the fact that pro rata clauses, included in the Court's definition of
"other insurance" provisions, concern percentages of liability without
any regard to sequence or order of payment.

[4] MCL 500.3109(3); MSA 24.13109(3) provides:

   (3) An insurer providing personal protection insurance bene-
   fits may offer, at appropriately reduced premium rates, a
   deductible of a specified dollar amount which does not exceed
   $300.00 per accident. This deductible may be applicable to all
   or any specified types of personal protection insurance benefits
   but shall apply only to benefits payable to the person named in
   the policy, his spouse and any relative of either domiciled in
   the same household. Any other deductible provisions require
   the prior approval of the commissioner.

no-fault insurers to offer deductibles of up to $300, its own $300 limitation is consistent with the policy of avoiding duplication of payments. Defendant also concludes from this provision that a reduction in potential liability of the no-fault insurer is capable of being passed on to the consumer, and that its limitation furthers the goal of reducing premium costs.

Subsection 3109(3) enables no-fault insurers who provide personal protection insurance benefits to offer, at appropriately reduced premium rates, a deductible not exceeding $300 per accident which may be applicable to all or some personal protection benefits. It is permissive in nature.

However, the provision applicable to the clauses at issue, § 3109a, requires an insurer providing personal protection insurance benefits to offer deductibles and exclusions reasonably related to other health insurance at appropriately reduced premium rates. It mandates the availability of coordination of benefits provisions, and requires the insurance commissioner's prior approval of the deductions and exclusions.

Defendant's argument that the existence of a $300 deductible in subsection 3109(3) implies legislative approval of a $300 limitation of liability in a § 3109a coordination of benefits clause, wherein the health insurer pays a "deductible," is totally unpersuasive. Similarly, defendant fails to indicate exactly how it will be duplicating payment of benefits if its limitation is not enforced, for plaintiffs' policies only cover that which is not covered by those of defendant.

Defendant further argues that plaintiffs' motions for summary disposition should not have been granted because the trial courts did not consider certain affidavits. Defendant asserts that unlike the situation in *Federal Kemper,* where there was

no record evidence that defendant's coordinated benefits coverage was offered at lower rates, the affidavits submitted herein constituted evidence that defendant offered its coordinated benefits coverage at reduced rates, consistent with the § 3109a goal of fostering consumer savings. We disagree.

Defendant's affidavits indicate that its premiums would be increased if the $300 limitation is not enforced, and not that its coordinated benefits were offered at a reduced rate.

As to defendant's policy arguments indicating a position that *Federal Kemper* was wrongly decided, these must be addressed to the Supreme Court. See *Edwards v Clinton Valley Center,* 138 Mich App 312, 313; 360 NW2d 606 (1984), lv den 422 Mich 890 (1985). We do not address defendant's remaining issues, which it concedes are not at issue in this appeal. Our review is limited to issues actually decided by the trial court. *Norton Shores v Carr,* 81 Mich App 715, 723; 265 NW2d 802 (1978), lv den 403 Mich 812 (1978).

Accordingly, the trial courts' orders granting plaintiffs' motions for summary disposition are affirmed.