HA-MARQUE FABRICATORS, INC v MICHIGAN EMPLOYMENT
SECURITY COMMISSION

Docket No. 106386. Submitted February 14, 1989, at Grand Rapids.
Decided July 17, 1989. Leave to appeal applied for.

Prior to February, 1982, Ha-Marque Fabricators, Inc., a Delaware
corporation, had no employees working in the State of Michigan and was not covered by the Michigan Employment Security Act. The owners of Ha-Marque also owned and operated
two Michigan corporations, Lumber Dealer Service and Marquette Fabricators, Inc. In 1982, Lumber Dealer made unemployment contributions at an assigned rate of 3.6 percent and
Marquette at an assigned rate of 6 percent. In February, 1982,
a corporate reorganization occurred and Lumber Dealer and
Marquette were merged into Ha-Marque. The Michigan Employment Security Commission subsequently terminated the
liability of Lumber Dealer and Marquette, assigned Ha-Marque
an MESC employer number, and transferred the unemployment
contribution rating accounts of Lumber Dealer and Marquette
to Ha-Marque. The MESC then assigned Ha-Marque a contribution rate of nine percent for 1982. Ha-Marque requested a
review and redetermination. The MESC affirmed its initial decision. Ha-Marque filed an appeal to the MESC's referee section
and a referee affirmed the MESC's decision. The MESC Board of
Review thereafter affirmed the referee's decision. Ha-Marque
appealed to the Kent Circuit Court. The circuit court, Robert A.
Benson, J., entered an order reversing the MESC Board of
Review and requiring the MESC to establish Ha-Marque's contribution rate for 1982 at 5.7 percent and to use this rate to
determine the appropriate rate in succeeding years. The judge
concluded that the section of the MESA relied on by the MESC in
determining the rate for Ha-Marque, MCL 421.22(e); MSA
17.524(e), was unworkable as presently drafted, and reasoned,
on the basis of a Senate bill and resolution, that the Legisla-

REFERENCES

Am Jur 2d, Statutes §§ 3, 162, 168, 179; Unemployment Compensation §§ 15 et seq.

See the Index to Annotations under Statutes; Unemployment Compensation.

ture intended that a weighted average approach be utilized instead. The MESC appealed and Ha-Marque cross appealed from that part of the decision which failed to invalidate § 22(e)(3) and which failed to award Ha-Marque a 2.7 percent contribution rate for 1982.

The Court of Appeals *held:*

1. The circuit court judge correctly interpreted § 22(e)(3) as requiring that a weighted average approach be applied to determine Ha-Marque's contribution rate. The Legislature did not intend a construction of § 22(e)(3) to mandate a calculation of the rate based on the balances of the employer's experience account, as the MESC would have the statute construed.

2. The Court of Appeals declined to address the other issues raised by the parties.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE RESOLUTIONS.
   Legislative resolutions, while not binding on the Court of Appeals, are entitled to respectful consideration.

2. STATUTES — JUDICIAL CONSTRUCTION.
   The construction given to a statute by those charged with the duty of executing it is given respectful consideration by the Court of Appeals, however, the Court is not bound by such construction of a statute.

3. UNEMPLOYMENT COMPENSATION — CONTRIBUTION RATE — TRANSFER OF BUSINESSES.
   Where a transfer of businesses simultaneously involves two or more transferors and a single transferee that has no rate of unemployment compensation contributions applicable immediately prior to the transfer date, a weighted average approach is applied to determine the transferee's contribution rate (MCL 421.22[e][3]; MSA 17.524[e][3]).

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *John H. Gretzinger* and *Pamela J. Kruse*), for Ha-Marque Fabricators, Inc.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *David A. Voges,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: HOOD, P.J., and WAHLS and NEFF, JJ.

Neff, J. The Michigan Employment Security Commission appeals as of right from a circuit court order reversing the MESC Board of Review's calculation of unemployment contribution owed by Ha-Marque Fabricators, Inc., for 1982.

Ha-Marque is a Delaware corporation that manufactures roof and floor trusses for residential and commercial buildings. Prior to February 28, 1982, its truss manufacturing operation was located in Forest, Illinois. Because Ha-Marque had no employees in Michigan, it was not covered by the Michigan Employment Security Act, MCL 421.1 *et seq.;* MSA 17.501 *et seq.*

The owners of Ha-Marque also owned and operated two Michigan corporations: Lumber Dealer Service and Marquette Fabricators, Inc.

Lumber Dealer was located in Wyoming, Michigan, and employed approximately five employees in 1982. Lumber Dealer had been subject to the MESA for more than five years. In 1982, Lumber Dealer made unemployment contributions at an assigned rate of 3.6 percent. This rate was calculated in accordance with the provisions of § 19 of the MESA, MCL 421.19; MSA 17.520.

Marquette was located in Sparta, Michigan, and employed approximately forty employees. Marquette had been subject to the MESA for more than five years and, in 1982, made unemployment contributions at an assigned rate of six percent.

On February 18, 1982, a corporate reorganization occurred, and Lumber Dealer and Marquette were merged into Ha-Marque. After the merger, Ha-Marque filed Form 1009, Registration Report to Determine Liability, with the MESC. After reviewing the information contained in this form, the MESC terminated the liability of Lumber Dealer and Marquette, assigned Ha-Marque an MESC employer number, and transferred the unemployment

contribution rating accounts of Marquette and Lumber Dealer to Ha-Marque. The MESC then assigned Ha-Marque a contribution rate of nine percent for the calendar year 1982.

Ha-Marque requested a review and redetermination of the contribution rate assigned to it by the MESC as a result of the merger. On July 16, 1982, the MESC refused to alter its position and affirmed its initial decision. Ha-Marque filed an appeal to the MESC's referee section. On February 13, 1986, the MESC referee issued a decision, finding that the MESC had properly assigned a nine percent contribution rate to Ha-Marque.

On June 3, 1987, the MESC Board of Review affirmed the referee's decision that the MESC had properly assigned a nine percent contribution rate to Ha-Marque. A circuit court appeal by Ha-Marque followed.

On January 4, 1988, the circuit judge set aside the prior commission rulings. On January 19, 1988, the circuit judge entered an order requiring that the MESC establish Ha-Marque's contribution rate at 5.7 percent for the 1982 calendar year and that it utilize this contribution rate to determine Ha-Marque's appropriate contribution rates in succeeding years. The judge concluded that the section relied on by the MESC in determining the tax rate for Ha-Marque was unworkable as presently drafted. On the basis of Senate Concurrent Resolution No. 582, adopted February 18, 1986, the judge reasoned that the Legislature intended that a weighted average approach be utilized instead.

The MESC appealed this order. On February 12, 1988, Ha-Marque cross appealed that portion of the circuit judge's decision which failed to invalidate § 22(e)(3) of the MESA and which failed to award Ha-Marque a 2.7 percent contribution rate for the calendar year 1982.

The provisions for determining contribution rates for employers are set forth in § 19 of the MESA, MCL 421.19; MSA 17.520. Under this provision, new employers are normally assigned a 2.7 percent contribution rate for their first two years, and their contribution rate is adjusted thereafter to reflect the employer's unemployment experience. In calendar years 1982, 1983, 1984, and 1985, this adjusted rate was also subject to § 19(a)(6) of the act, which was a limiting provision that prohibited an employer's rate from rising faster than certain specified amounts. MCL 421.19(a)(6); MSA 17.520(a)(6).

A variation from the rate-setting procedure of § 19 occurs only in the event of a transfer of business. In the event of a transfer of business, the rate-setting provisions are set forth in § 22(e) of the act, MCL 421.22(e); MSA 17.524(e).

Section 22(e)(3) is applicable where, as in this case, a transfer of businesses simultaneously involves two or more transferors and a single transferee that has no applicable rate of contributions. Section 22(e)(3) provides:

> Where transfers of businesses simultaneously involve 2 or more transferors and a single transferee who has no rate of contributions applicable immediately prior to the transfer date, such transferee shall be assigned a contribution rate beginning with the first day of the quarter in which the transfers occur based upon the *rating account percentage* determined by the transferred rating account balances and the total and insured payrolls properly allocable to the transferee as of the date on which the businesses were transferred, or as of June 30 of the year in which the businesses were transferred, whichever is earlier, and a contribution rate of 2.7% for any portion of the calendar year prior to the first day of the quarter in which the transfers occur. If none of the trans-

ferors was an employer entitled to an adjusted contribution rate, then a contribution rate of 2.7% shall apply to the transferee for the calendar year in which the transfers occur. [Emphasis added.]

The problem in the present case arises because of the language in the above section that refers to the "rating account percentage," which is used to determine the rates for the transferee during the year in which the transfer of business occurs. Prior to 1978, this percentage could easily be determined under procedures set forth in the statute and, once determined, would allow the MESC to use a chart, which was set forth in § 19 of the MESA, to determine a contribution rate for a given year. Over a period of years, however, the Legislature has made significant alterations in the contribution rate calculation and has amended various definitions under the act, but it has failed to amend § 22(e)(3) to replace the reference to the "rating account percentage." This term does not relate to anything found in the act at the present time. The parties differ on how § 22(e)(3) should now be interpreted.

The MESC contends that § 22(e)(3) is unambiguous and can be used to establish the rate for 1982 in the present case. The MESC does this by looking to § 17(a), MCL 421.17(a); MSA 17.518(a). Section 17(a) provides, in part: "[A] reference in this act to an employer's 'experience record' or 'rating account' shall be construed to include reference to the employer's experience account." According to the MESC, when this definition is applied to § 22(e)(3), the statute actually reads as follows:

[S]uch transferee shall be assigned a contribution rate . . . based upon the employer's experience account percentage determined by the trans-

ferred rating account balance for the total insured payrolls.

The MESC submits that this construction is a reasonable interpretation of the language in § 22(e)(3), and that it should have been used by the circuit court. The circuit judge disagreed, stating: "[T]he Attorney General, other than its rather weak argument from Section 17, gives no rational basis to arrive at this question of legislative intent."

Ha-Marque, on the other hand, contends that, because of the reference to the "rating account percentage," § 22(e)(3) of the act cannot be applied at all. Ha-Marque argues that, under § 19 of the act, it should be treated as a new employer and should be assigned a 2.7 percent contribution rate for 1982.

In finding that the Legislature intended that a weighted approach should be used and that Ha-Marque should be assigned a 5.7 percent contribution rate for 1982, the circuit judge relied, in part, on Senate Bill No. 167 and Senate Concurrent Resolution No. 582.

Senate Bill No. 167, introduced on March 13, 1985, which is a bill to amend § 22 of the act, states in pertinent part:

> (3) For calendar years after 1981, where transfers of businesses simultaneously involve 2 or more transferors and a single transferee who has no rate of contributions applicable immediately prior to the transfer date, that transferee shall be assigned a contribution rate beginning with the first day of the quarter in which the transfers occur based upon the weighted average of the contribution rates of the transferors for the year in which the transfer occurs, rounded to the nearest ½ of 1%, and a contribution rate of 2.7% for

any portion of the calendar year prior to the first day of the quarter in which the transfers occur. If none of the transferors was an employer entitled to an adjusted contribution rate, then a contribution rate of 2.7% shall apply to the transferee for the calendar year in which the transfers occur. The weighted average of contribution rates shall be determined based on the insured payroll, for the 4 calendar quarters prior to the date of transfer, of each transferror's portion of the business transferred, as a percentage of the insured payroll of the entire combined businesses transferred.

Senate Concurrent Resolution No. 582, which was adopted on February 18, 1986, states in pertinent part:

Resolved by the Senate (the House of Representatives concurring). That the members of the Michigan Legislature hereby express their intent that section 19(a)(6) of the Michigan Employment Security Act apply as stated in the act to the computation of all employer rates of contribution under the act and that rates computed under section 22(e)(3) be computed with the application of 19(a)(6), and further that Senate Bill No. 167 sets forth the manner in which the Legislature intended that such computation should be made.

While legislative resolutions are not binding on this Court, they are entitled to respectful consideration. *Franks v White Pine Copper Division,* 422 Mich 636, 659; 375 NW2d 715 (1985).

This Court reviews questions of law or fact on appeal from decisions of the MESC Board of Review, but we may reverse only if the order or decision is contrary to law or is unsupported by competent, material, and substantial evidence on the entire record. Const 1963, art 6, § 28; MCL 421.38; MSA 17.540; *Dow Chemical Co v Curtis,* 158 Mich App 347, 352; 404 NW2d 737 (1987), rev'd and re-

manded on other grounds 431 Mich 471; 430 NW2d 645 (1988).

Where there is no dispute as to the underlying facts, questions presented on appeal are to be treated as matters of law. The same standard applies to a circuit court's review of the decisions of the board of review. *Dow, supra.*

In *Boyer-Campbell Co v Fry,* 271 Mich 282, 296; 260 NW 165 (1935), our Supreme Court stated:

> "[T]he construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons." *United States v Moore,* 95 US 760 [763; 24 L Ed 588 (1878)]. See, also, *Fawcus Machine Co v United States,* 282 US 375, 378 [51 S Ct 144; 75 L Ed 397 (1931)].

Although, in this appeal, the MESC interprets § 22(e)(3) to mandate a calculation of the employer's contribution rate based on the balances in the employer's experience account, we do not believe that the Legislature intended such a construction. While we give respectful consideration to the MESC's interpretation of the statute, we are not bound by it and we decline to follow it here.

We believe that the circuit court judge correctly interpreted § 22(e)(3) as requiring that a weighted average approach be applied to determine Ha-Marque's contribution rate.

The MESC contends that a ruling in this case favorable to Ha-Marque could result in a loss of certain benefits afforded the State of Michigan by the federal government. The threat of possible federal action if this Court does not adopt the position of the MESC is a matter that is extraneous

to the legal issue we are called upon to decide in this case. We therefore decline to address this issue.

Ha-Marque's final contention on appeal is that § 22(e)(3) is unconstitutional. Because of our resolution of this case on the basis of statutory construction, we decline to address the constitutional issue. We will not pass upon constitutional issues where other questions are raised that dispose of the case. *Warren Twp v Raymond,* 291 Mich 426, 429; 289 NW 201 (1939). Moreover, while this issue was presented to the lower court, the circuit judge specifically declined to address it. This Court's review is limited to issues actually decided by the lower court. *Michigan Mutual Ins Co v American Community Mutual Ins Co,* 165 Mich App 269, 277; 418 NW2d 455 (1987).

Affirmed.